In re Hugh E. HOOD, SS # 263–48–8565 and Joyce Mae Hood, SS # 585–19–2200, Debtors.

**Hugh HOOD, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, ENMR Telephone Cooperative, Clifford Cone and City of Hobbs, N.M., Defendants.**

Bankruptcy No. 11–92–14398 MA.
Adversary No. 92–1348 M.

United States Bankruptcy Court,
D. New Mexico.

June 23, 1993.

---

Robert M. Janes, Albuquerque, NM, for plaintiff.

James A. Askew and Deborah R. Jenkin, Albuquerque, NM, Harold Pigg, Lubbock, TX, for Resolution Trust Corp.

John E. Farrow, Albuquerque, NM, ENMR, Cone & Hobbs.

## MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

This matter came before the Court on the motion of the Resolution Trust Corporation ("RTC") for summary judgment as to count VI of the Plaintiff's complaint. Having considered the briefs, the arguments of counsel, the applicable law, and being otherwise fully informed and advised, the Court finds the motion is not well taken.

## FACTS

On April 23, 1985, the Plaintiff entered into an agreement with Investor's Equities Southwest Corporation ("IESC"), an Arizona corporation, that granted the Plaintiff an option to purchase certain land and buildings for a specified price, upon the occurrence of certain specified events. At least part of this agreement was contained in a letter to the Plaintiff, dated April 23, 1985, from Gordon Elsey, the President of IESC. The Plaintiff indicated his acceptance and approval of the agreement by affixing his signature to the letter on the same day. This document will be referred to as the "Guarantee Option Agreement."

The Guarantee Option Agreement specifically provides that within ninety days of the occurrence of certain enumerated events the Plaintiff would be deemed to have exercised his option to purchase the specified land and buildings of $2,989,000, plus an amount equal to all sums owed to Valley Federal Savings Bank on a promissory note dated March 1, 1985. The Plaintiff asserts that the Guarantee Option Agreement only evidences part of the agreement entered into between the Plaintiff and IESC and that their agreement contains additional terms that were not reduced to writing. The RTC asserts that the letter represents the complete and total agreement entered into between the Plaintiff and the IESC.

On March 8, 1990, IESC assigned its interest in the Guarantee Option Agreement to Valley Federal. Prior to the date the Guarantee Option Agreement was assigned to Valley Federal, that institution was taken over by the RTC. The name of the institution was also changed from Valley Federal Savings Bank to Valley Savings Bank, F.S.B. As the name change is not material for purposes of this opinion, both institutions will be referred to as "Valley Federal." Thus, in effect, the Guarantee Option Agreement was assigned to the RTC.

On or about February 26, 1990, the building lease was terminated by agreement between Valley Federal and IESC. This was one of the enumerated events that triggered the Guarantee Option Agreement. The Plaintiff was given written notice that the lease was terminated by letter dated February 20, 1991, and was given ninety days from that date to exercise his option to purchase. It is disputed whether the Plaintiff attempted to exercise his op-

tion to purchase within that ninety day period.

## DISCUSSION

■ The RTC has cited a variety of grounds for summary judgment: violation of the rule against perpetuities, unreasonable restraint on alienation, and application of the *D'Oench Duhme* Doctrine and its statutory counterpart 12 U.S.C. § 1823(e). If the *D'Oench Duhme* Doctrine and 12 U.S.C. § 1823(e) are applicable to the Guarantee Option Agreement, the Plaintiff has no remaining interest in the specified properties as the Guarantee Option Agreement specifically states that the Plaintiff will lose any interest in the properties ninety days after the occurrence of certain specified events, at least one of which has occurred. If D'Oench Duhme and section 1823(e) are not applicable, summary judgment is not appropriate as material questions of fact will remain as to the content of the Guarantee Option Agreement.

■ This Court holds that material questions of fact remain as to whether the *D'Oench Duhme* Doctrine and 12 U.S.C. § 1823(e) should be applied by the Court to this case. The *D'Oench Duhme* Doctrine extends to federal bank insurers and regulators the protection given to state law created bank receivers under earlier equitable estoppel principles. See, *Putman v. Chase*, 106 Or. 440, 212 P. 365 (1923).

In *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), a borrower disputed liability to the FDIC on a promissory note on the grounds that the payee bank had agreed that the note would never be enforced. The agreement that the note would not be enforced was in writing, but not in the bank's files. Justice Douglas, writing for the majority, found a strong federal policy to protect the FDIC and its public funds from any such side agreements. *D'Oench Duhme*, at 459, 62 S.Ct. at 680. Justice Douglas specifically concluded that no showing of actual deception of the FDIC or injury to the FDIC was needed for such agreements to be ignored. Moreover, there was no need to show intent to deceive on the part of the defen-

dant, since the mere "tendency" of any such arrangement to violate federal policy was sufficient to estop the defendant from raising such arrangements as a defense. *Id.*

Justice Douglas also stated "[p]ublic policy requires that a person who, *for the accommodation of the bank executes an instrument which is in form a binding obligation,* should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced." (emphasis added). Justice Douglas further stated that the test is "whether the note was designed to deceive the creditors or the public authority or would tend to have that effect." *Id.*

In this instant case, it appears that the Guarantee Option Agreement was entered into between Hood and IESC. It also appears that the Valley Federal encouraged the Plaintiff to enter into the Guarantee Option Agreement. Valley Federal, however, was not a party to the Guarantee Option Agreement. In fact, Valley Federal did not obtain any interest in the Guarantee Option Agreement until March 8, 1990, when it acquired IESC's interest in the Guarantee Option Agreement from IESC, or parties related to IESC. This was well after the RTC took control of Valley Federal.

Thus, under the *D'Oench Duhme* Doctrine, questions of fact remain. It is unclear whether the Guarantee Option Agreement was purely an accommodation to Valley Federal and whether the Guarantee Option Agreement was designed to deceive the creditors of Valley Federal, or the RTC, or would tend to have that effect.

■ 12 U.S.C. 1823(e) is a statutory codification of the *D'Oench Duhme* Doctrine. See, *FDIC v. Wright*, 942 F.2d 1089 (7th Cir.1991). Section 1823(e) states:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan *or by purchase* or as receiver of any insured depository insti-

tution, shall be valid against the Corporation ... (emphasis added).

Thus, the plain language of section 1823(e) makes it applicable to assets acquired "by purchase." Section 1823(e), however, must be read in harmony with *D'Oench Duhme*. *D'Oench Duhme* protects federal insurers against secret or undisclosed claims or problems that might diminish the regulator's interest in assets which are obtained from failed financial institutions. The purpose of section 1823(e) is identical. To read section 1823(e) more expansively will bring section 1823(e) into direct conflict with the "taking clause" of the Fifth Amendment to the United States Constitution.

Generally, if the government wants to take private property, it must pay just compensation to the private party from whom the property is taken. *D'Oench Duhme* creates a very limited exception to the protection provided by the Fifth Amendment based upon public policy concerns. In this case, the RTC, in its capacity as receiver for Valley Federal, did not acquire its interest in the Guarantee Option Agreement until after it took control of Valley Federal. The Guarantee Option Agreement was purchased from IESC, or parties related to IESC, who appear to have no direct relation to Valley Federal.

The Supreme Court has eschewed the development of any set formula and has instead relied on ad hoc factual inquiries into the circumstances of each particular case to determine whether government regulation constitutes a taking. *Bowen v. Gilliard*, 483 U.S. 587, 606, 107 S.Ct. 3008, 3019, 97 L.Ed.2d 485 (1987). To aid in the determination of whether government regulation of property constitutes a taking, the Supreme Court has, however, stated three factors that have particular significance. These factors are the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the government action. *Id.*

In evaluating these factors in relation to this matter, the RTC's acquisition of IESC's interest in the Guarantee Option Agreement rises to the forefront, particularly in relation to the third factor listed, the character of the governmental action. In this case, the RTC is not uniformly applying section 1823(e) to assets it acquired when it took over Valley Federal, or to a group of assets purchased from a failing savings institution. Rather, the RTC made an informed decision to acquire the Guarantee Option Agreement, an asset owned by a third party. It is unclear whether the RTC was aware of the Plaintiff's assertion that the terms of the Guarantee Option Agreement were not fully set forth in the April 23, 1985 letter when it made the acquisition.

The RTC acquired IESC's interest in the Guarantee Option Agreement on the open market. The RTC asserts that the acquisition was made to protect the RTC's interest in assets it acquired when it took control of Valley Federal. The Guarantee Option Agreement, however, has value independent of the property to which it relates.

The right to enter into a contract is fundamental. The parties to a contract must reasonably be able to expect the terms of their contract to be binding. Fundamental notions of fairness are violated if the RTC is permitted to use the *D'Oench Duhme* Doctrine and 12 U.S.C. § 1823(e) to avoid contract provisions that the makers of a contract have entered into in good faith, when the agreement has no tendency to violate federal policy regarding financial institutions. Further, the use of *D'Oench Duhme* and section 1823(e) would allow the RTC to purchase interests that have little value to their owners because of unwritten contractual provisions, or applicable state or federal laws, and then, through the operation of *D'Oench Duhme* and section 1823(e) enhance the value of those interests to the RTC and decrease the value of the same interests to other parties. This Court finds that this kind of activity is a taking of the kind proscribed by the Fifth Amendment.

When making this kind of acquisition, this Court holds that the RTC may not use section 1823(e) to enhance the value of the asset purchased and obtains only the rights

of the selling party. Thus, material questions of fact remain as to the content of the Guarantee Option Agreement, and summary judgment may not be granted.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. F.Bankr.R. 7052. An appropriate order shall enter.