Attila VOLGES, Plaintiff,

v.

The RESOLUTION TRUST CORPORATION, Defendant.

No. 93–CV–5637 (TCP).

United States District Court, E.D. New York.

Feb. 16, 1994.

Robert C. Hiltzik, Great Neck, NY, for plaintiff Attila Volges.

Anthony Dean, Windels, Marx, Davies & Ives, New York City, Matthew Dollinger, Dollinger, Gonski, Grossman, Permut & Hirschhorn, Carle Place, NY, for defendant RTC.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

This case came before the Court by way of a motion for a preliminary injunction against the Resolution Trust Corporation, (hereinafter "RTC"), to enjoin the RTC from auctioning off, selling or otherwise transferring the mortgages of plaintiff to any party other than plaintiff's assigns pending the final determination by this Court that the RTC had breached a written contract it had entered into with the plaintiff with respect to the disposition of the aforementioned mortgages and thus should be held to its specific performance.

At oral argument before it on December 16, 1993, this Court referred the matter to Magistrate Michael L. Orenstein for a factual hearing. The RTC has since contested the ability of the Magistrate, and indeed this very Court, to preside over this matter, under the auspices of 12 U.S.C. § 1821, otherwise known as the Financial Institutions Reform, Recovery, and Enforcement Act (hereinafter "FIRREA"). The RTC argues that pursuant to FIRREA, a district court lacks subject matter jurisdiction to interfere in any way with matters in which the RTC is acting pursuant to its powers as receiver or conservator of a failed financial institution, and therefore, this action must be dismissed, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. After an extensive review of the applicable case law, this Court finds that there are factual distinctions present in the instant action which serve to remove this dispute from the protective purview of FIRREA, and thus judicial intervention is not only proper, but warranted.

## FACTS

If this Court were entertaining a formal motion to dismiss, the facts as presented to it would have to be construed in a light most favorable to the non-moving party. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991). The relevant facts in this action are largely uncontested and their full review is not necessary for purposes of this memorandum. It is sufficient to note that both sides agree that the RTC stepped in as receiver of the defunct State Savings FSB, with whom plaintiff had six existing mortgages. Thereafter, plaintiff and the RTC, by way of its attorney, Bruce Roberts, Esq., voluntarily entered into an agreement whereby the RTC agreed to transfer to plaintiff the six mortgages in return for $740,000, in full satisfaction thereof. Plaintiff claims he was ready, willing, and able to adhere to his obligations under the contract but to no avail, for the RTC, in lieu of honoring the contract terms, desired to foreclose on the properties. Plaintiff sought this Court's intervention to halt the foreclosure proceeding and to bind the RTC to the contract that it had made.

## DISCUSSION

Congress created the RTC under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as a means to deal with the morass which resulted from the failure of many federally incorporated and insured savings and loan associations. The RTC, or Corporation as it is often referred, as conservator or receiver of a failed financial institution would, "by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution, and ... [to] the assets of the institution; ...." 12 U.S.C. § 1821(d)(2)(A)(i). In order to facilitate the just and speedy resolution of a failed institution's accounts, Congress sculpted FIRREA to bestow virtually unlimited administrative powers upon the RTC when it was acting in its receiver or conservator capacity. Thus the Corporation, and the Corporation alone, would have the power to, among other things, "transfer any asset or liability of the institution in default ... without any approval, assignment, or consent with respect to such transfer." *Id.* at (d)(2)(G)(i)(II).

In further deference to the RTC, FIRREA freed the Corporation from any and all restrictions with respect to the disposition of a failed institution's assets. Specifically, section (j) of FIRREA posits that "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1821(j). Courts have afforded section (j) the broad credence that its literal wording commands, and have dismissed actions attempting to restrict the Corporation in its receiver or conservator capacity for lack of subject matter jurisdiction in virtually all instances. *See RTC v. Elman,* 949 F.2d 624, 627 (2d Cir.1991); *Ward v. RTC,* 996 F.2d 99, 102 (5th Cir. 1993); *Telematics Int'l., Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703, 705 (1st Cir. 1992); *Point Developers, Inc. v. State Savings FSB,* No. 93-4078, at 20 (E.D.N.Y. Jan. 21, 1994). This does not leave an aggrieved party without any remedy against the RTC. Rather, FIRREA contains within its statutory scheme an administrative mechanism whereby potential litigants may present their claims first to the RTC, and depending upon the outcome of that presentation, then move on to have their case heard by a district court. *See* 12 U.S.C. §§ 1821(d)(3)–(8).

■ By virtue of this sweeping power, Congress essentially licensed the RTC to breach contracts with respect to the assets of or claims against the failed institution if the Corporation felt that such a course of action was the most prudent and efficient way to facilitate the winding-up of the institution's affairs. However, courts have held that the powers of the RTC as enumerated under FIRREA are not without limit. *See, e.g., In re Colonial Realty Co.,* 980 F.2d 125, 137 (2d Cir.1992) (automatic stay imposed by statute held binding on RTC in its receiver capacity); *Howerton v. Designer Homes by Georges,*

*Inc.,* 950 F.2d 281, 283 (5th Cir.1992) (RTC held bound to terms of pre-existing contract when failed to repudiate contract in timely manner). While the obligations of a pre-existing contract, negotiated by the failed institution and outstanding when the RTC assumes the receiver role, are not such a limitation,[1] this Court feels that the obligations embodied in a contract entered into *by* the RTC in its efforts to distribute and wind-up the affairs of a failed institution indisputably are.

■ In the instant action, the RTC, as receiver of State Savings and pursuant to its statutory authority, was free to dispose of the mortgages in any way it saw fit, free from outside intervention. Thus the RTC could have foreclosed upon the mortgages instantly, without due consideration of any pre-existing contract or agreement with the plaintiff or any other party. *See Modzelewski v. RTC,* 14 F.3d 1374, 1377–78 (9th Cir. 1994) (RTC empowered to terminate failed institution's prior agreements when appointed receiver). The method that the RTC chose to effect the disposition was the execution of the settlement contract with the plaintiff. Thereafter, the plaintiff and the RTC negotiated and entered into a contract, independently and presumably at arms length, for the settlement of the six mortgages. It is this Court's feeling that the RTC must be held to this contract.

The significance of the RTC's voluntary assumption of the contractual duties inherent in the settlement contract is paramount to this determination. The RTC, in its capacity as receiver, voluntarily assumed a new responsibility, that of being bound by the settlement contract here. The contract at issue was not the pre-existing obligation of the institution into whose shoes the RTC stepped when it was named receiver of the bank. Nor was it comprised of a claim against the institution for which the RTC was appointed receiver. If it were, this Court would have

1. *See First Nationwide Bank v. Florida Software Services, Inc.,* 770 F.Supp. 1537, 1541 (M.D.Fla. 1991). In the *First Nationwide* case, certain licensing agreements which had been negotiated by two insolvent financial institutions were distributed by the FSLIC to other institutions. This was in derogation of anti-assignment clauses contained within the agreements. The licensors claimed the agreements had been violated and informed the assignees that they would be terminated. The assignees sought declaratory relief from the Court. The Court held that the anti-assignment clauses were not binding upon the FSLIC, pursuant to FIRREA. *Id.*

dismissed this case pursuant to the statutory directive of FIRREA and the veritable plethora of case law in support of such a dismissal. Rather, this scenario extends one step further, and this Court feels that this extension serves to take this case out of the realm of FIRREA and place it under the rules of normal contract law.

■ Once the RTC consummated a contract to dispose of the mortgage assets entrusted to it, it assumed a second persona, that of a normal contracting party. As such, the mandates and protections of FIRREA no longer applied. Once made, this contract, like any other contract, was governed by the normal principles of contract law. These principles posit that a party who has bargained for a contract and received consideration for it will be estopped from denying its existence. *See Whitney v. Stearns,* 16 Me. 394, 397 (1839) (even a mere peppercorn, given for value, can cause enforceable contract to be made). Further, there is implied within every contract an obligation to act in good faith. *See* 3 Arthur L. Corbin, *Corbin on Contracts* § 541, at 94 (Supp.1993). When such good faith is not proffered, courts will bind the breaching party to the restrictions of the contract that it voluntarily assumed.

To posit that FIRREA precludes this Court from acting to enforce an arms length transaction would not only make a mockery of the law of contracts, but it would not serve the express interests of FIRREA's statutory scheme in any way. As posited in the House Report on FIRREA, the purpose of the legislation is, among other things, to "dispose of the assets of [failed thrift] institutions...." H.R.Rep. No. 54(I), 101st Cong., 1st Sess., pt. 1, at 308 (1989), *reprinted in* 1989 U.S.C.C.A.N. pp. 86, 103. In response to strong political outrage concerning the savings and loan failures, Congress hoped that by allowing the RTC unbridled authority to manage the assets of a failed institution, "[t]he interests of the American taxpayer ... [in the] expedit[ious] resolution to the monumental problems involved with the unprece-

dented costs of dealing with hundreds of insolvent thrifts and the orderly disposition of the assets of these failed institutions" would be served. *Id.*

■ Under FIRREA, then, Congress gave the RTC the authority to act in its capacity as receiver without fear of judicial reprimand in order to expedite the winding-up process of insolvent institutions. This Court, however, will not read FIRREA as a license by Congress to empower the RTC with the ability to act freely and without *any* legal constraints. *See generally In re Colonial Realty Co.,* 980 F.2d 125 (2d Cir.1992). This Court can elucidate no economy in allowing the RTC to enter into a binding contract one day and dishonor the same the next. In fact, that type of jurisprudence seems entirely contradictory to the very tenets upon which FIRREA is based.[2]

If, under the circumstances presented here and in conjunction with the preceding analysis, the RTC were to prevail, no person in his, her or its right mind would make an agreement with the RTC, because he, she or it would be bound by said agreement but the RTC would not. Such a precedent would have the effect of impeding, not expediting, the disposition of the assets of the failed institution.

Once the inapplicability of FIRREA is determined and the normal law of contracts consulted, defendant's claims that: the plaintiff must have first presented this claim to the RTC and allowed it 180 days to make a determination as to its merit; the plaintiff may not under FIRREA obtain an injunction from a district court, rather the only remedy it has is a claim for damages; and that this Court lacks subject matter jurisdiction must fail at this juncture. Should it become apparent after a factual determination has been reached by the Magistrate that a *motion to dismiss* would be appropriate, this Court will entertain such a motion at that time. This memorandum is merely in response to defendant's contention that the Court lacks subject

---

**2.** *Accord In re Hood,* 156 B.R. 296, 299 (Bankr. D.N.M.1993). In *Hood,* the Court determined that FIRREA would not be used as a vehicle whereby the RTC could disavow a contract when the contract had no tendency to violate federal policy regarding financial institutions. *Id.*

matter jurisdiction. In no way does it pass upon the merits of the case herein.

SO ORDERED.