United States Court of Appeals,

Fifth Circuit.

No. 92-2443.

Terry S. WARD, Plaintiff-Appellant,

v.

RESOLUTION TRUST CORPORATION, et al., Defendants-Appellees.

July 22, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, GARWOOD and WIENER, Circuit Judges.

PER CURIAM:

In this appeal we review the continued efforts of Plaintiff-Appellant Terry S. Ward to purchase the Katy Plaza Office Building (the "Building") in Houston, Texas, from Defendants-Appellees Resolution Trust Corporation (RTC) which had acquired the Building as a result of the failure of a thrift. Despite Ward's earlier efforts to buy the Building, it had been sold by the RTC to Defendant-Appellee Patriot American Investors, L.P. (PAI). The Building was just one of a number of properties included in a nationwide assemblage conveyed by RTC to PAI in a so-called "portfolio" sale. Ward had sought unsuccessfully to enjoin that transaction to the extent the Building was included among the properties to be sold in globo to PAI. Despite that fait accompli, Ward now seeks rescission of the sale of the Building to PAI; he does not seek monetary damages or other relief.

Concluding that the district court reached the right result in dismissing Ward's action, we affirm. Moreover, given our consideration of the briefs of counsel and their oral arguments, and our review of the record in this case, we would be inclined to affirm the district court without writing an opinion, much less publishing it, but for the need we perceive to disabuse Ward and others "out there" who might be similarly situated and similarly inclined to instigate and prosecute litigation grounded on the same flawed theories. We refer to Ward's legal conclusion that the RTC's proposed disposition of property may be enjoined, or its actual disposition rescinded, on allegations of inadequate price,

inadequate competition, unequal treatment of potential offerors, or failure of the RTC to make a determination that the proposed sale will "maximize" the net present value return on the property in question.

More specifically we are constrained to refute Ward's contentions that the RTC's final orders awarding the sale of the Building to PAI exceeded that agency's statutorily authorized powers and functions, in violation of Congressional restrictions set forth in subsections (3)(C) and (11)(D)(ii) of 12 U.S.C. § 1441a(b). In so positing, Ward insists that neither his initial action for an injunction nor his post-sale action for rescission was barred by the anti-injunction provision of FIRREA.[1] Like the district court before us, however, we find that Ward's theory was conceived in flawed logic and therefore dies aborning.

## I

## FACTS AND PROCEEDINGS

A. *Background*

The Building was previously owned by a now-failed thrift institution which operated under RTC conservatorship from June 15, 1990, until July 26, 1991, when the RTC-Receiver was appointed to serve as receiver for that institution, thereby succeeding to ownership of the Building. Prior to being placed in conservatorship and later in receivership, the subject thrift had negotiated with a number of prospective purchasers of the Building, including Ward. In December 1990, he submitted a purchase offer, contingent on acquiring some adjacent property. That offer was rejected by the RTC, but Ward and others were subsequently notified that the Building would be re-offered.

In June 1991, Ward again offered to buy the Building and the same adjacent land, but the RTC rejected this offer too. Nevertheless, Ward was invited to submit yet another, higher offer for the seller to consider. Although Ward ultimately did so, it was not until well after the RTC and PAI had contracted for the portfolio sale in question. The contract between the RTC and PAI ("Master Agreement of Sale") contemplated the sale of numerous properties scattered throughout the United

---

[1] The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1811 et seq. See, in particular, 12 U.S.C. § 1821(j).

States and having an aggregate value between $300 and $500 million. Both the Building and the adjoining land were included among the properties constituting the portfolio assemblage.

The Master Agreement of Sale was the product of extensive negotiations between PAI and the RTC, which began in February 1991. Independent experts were retained to evaluate the economic viability and structure of such a transaction, the qualifications of PAI, and the recommended controls and protections. In May 1991, the Board of Directors of the RTC approved such a portfolio sale in principle. In August 1991, the Master Agreement of Sale was executed by the RTC. That agreement provided for the affected properties to be sold to PAI at 100% of current market value, as determined by expert appraisers. It also provided that the aggregate sales proceeds of all properties (as distinguished from the individual sales proceeds of each separate property) should not be less than the total for which the individual properties could be sold under pre-existing, applicable policies of the RTC. Following initial negotiations, a package of five properties, including the Building, was agreed upon by the RTC and PAI. A closing was tentatively scheduled for June 1992, at an aggregate price of approximately $30 million.

B. *Litigation*

Ward instituted the instant action on May 12, 1992, after the RTC failed to agree to his amicable demand for rescission of the Master Agreement of Sale to the extent it covered the Building. In the district court Ward sought review under the Administrative Procedure Act.[2] Specifically, he sought to enjoin PAI, Defendant-Appellee Albert V. Casey, and the RTC in its corporate capacity, from consummating the sale of the Building and transferring its title during the pendency of the litigation. As noted, he sought no monetary damages. On June 2, 1992, the district court denied the injunction and dismissed Ward's complaint.[3] In so doing, the court found numerous problems of substance and procedure in Ward's litigation, including principally the one we address today: the anti-injunction provisions of FIRREA, specifically § 1821(j), which provides that "[N]o court may take any action ... to restrain or affect the exercise of powers or functions of [the RTC] as a

---

[2]5 U.S.C. § 701-706.

[3]*Ward v. RTC,* 796 F.Supp. 256 (S.D.Tex.1992).

conservator or receiver."[4]

C. *Subsequent Occurrences*

After Ward was unsuccessful in the district court in his attempt to block the RTC's disposition of the Building as part of the subject portfolio sale to PAI, he sought supervisory relief from this court pending appeal. We denied such relief, and the sale of the Building was closed on August 20, 1992. That is the transaction which Ward now seeks to rescind.

## II

## ANALYSIS

Having failed to prevent the RTC from conveying the Building to PAI, Ward now attempts to do indirectly, through rescission, what he was unable to do directly through injunction. For if Ward is to have any hope of getting another crack at becoming the successful bidder and acquiring the Building, he must first succeed in having title to the Building divested from PAI (or its successors if there have been any) and re-vested in the RTC. We therefore examine his entitlement to rescission from the same perspective we would his entitlement to a permanent injunction.

Ward does not—because he cannot—contest the district court's statement that § 1821(j) makes clear that the RTC is "free to perform its functions, which include the liquidation of receivership assets, without being encumbered by the possibility of injunctive actions." The court relied on the earlier quoted language from § 1821(j) to the effect that no court may take any action to restrain or affect the exercise of powers or functions of the RTC whether as conservator or receiver of a failed thrift. As we observed in *281-300 Joint Venture,*[5] by virtue of § 1821(j) "[t]he courts lack the ability to enjoin [actions] that are within the statutory powers of the RTC as conservator or receiver." In sustaining the denial of injunction, we there found that, whether acting

---

[4]*See id.* at 258 ("It is clear from this statute that the RTC receiver is free to perform its functions, which include the liquidation of receivership assets, without being encumbered by the possibility of injunctive actions"); *see also 281-3000 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992) ("[R]egardless of [the] likelihood of success on the underlying claims" injunctive relief against the RTC cannot be granted.).

[5]938 F.2d at 39.

as conservator or receiver, the RTC "has broad authority to dispose of assets ... 12 U.S.C. 1821(d)(2)(B)(ii). Hence, the court may not enjoin the exercise of the RTC's powers in this instance ... regardless of [the] likelihood of success on the underlying claims."[6]

The Third Circuit observed, in *Gross v. Bell Savings Bank,* that the courts are prohibited by § 1821(j) from enjoining the RTC's disposition of receivership or conservatorship assets unless the RTC is "acting clearly outside its statutory powers" under FIRREA.[7] The third Circuit went on to consider the types of RTC actions that might be deemed "clearly outside its statutory powers" and thus subject to injunction, such as adjudicat ing state law claims or foreclosing on an asset while a bankruptcy stay is in effect.[8] That court noted, and we agree, that as long as the RTC is "exercis[ing] judgment under one of its enumerated powers" such as running the affairs of a troubled financial institution (including liquidation of receivership assets), the courts may not enjoin the activities of the RTC merely because someone alleges that it is not "running [the troubled institution's] affairs in a legal manner."[9]

In the face of the positions already espoused by this and other circuit courts, and despite the undeniable fact that disposing of assets of the failed thrift when acting as its conservator or receiver is a quintessential statutory power of the RTC, Ward nevertheless insists that injunction (and therefore rescission) is available in the instant case. Specifically, Ward argues that when the RTC purports to dispose of an asset for a viciously low price it frustrates the direct intent of Congress, and is thereby "acting clearly outside of its statutory powers." Ward contends that the sale of the Building to PAI for a net present value that he calculates to be substantially less than his $3.8 million cash offer, constitutes a failure to maximize the net present value return from the sale. He also asserts that

---

[6]*Id.*

[7]974 F.2d 403, 407 (3d Cir.1992).

[8]The recent D.C. Circuit decision in *National Trust for Hispanic Preservation, et al. v. FDIC,* No. 93-5137, --- F.2d ----, 1993 WL 183508 1993 U.S.App. LEXIS 12588 (D.C.Cir. May 28, 1993), relied on § 1821(j) in refusing to enjoin the sale of an historic building despite the sale's violation of the National Historic Preservation Act (NHPA), 16 U.S.C. §§ 420 et seq.

[9]*Gross,* 974 F.2d at 408.

the RTC's refusal to withdraw the Building from the property assemblage in the portfolio and offer it individually to the highest bidder constitutes a failure to adhere to the requirements of "fair and consistent treatment of offerors." Ward illustrates the latter point by reference to the RTC's requiring him to make a cash offer while allowing PAI to negotiate a purchase on favorable credit terms. Ward concludes that, in selling the Building to PAI for such a price and on such terms, the RTC exceeds its statutory powers and functions. We disagree entirely.

Ward fails (or refuses) to recognize the difference between the exercise of a function or power that is clearly outside the statutory authority of the RTC on the one hand, and improperly or even unlawfully exercising a function or power that is clearly authorized by statute on the other. None can question that the RTC is statutorily authorized to sell real estate of an institution which is under RTC conservatorship or receivership, or to sell real estate acquired by the RTC directly or indirectly from such an institution. So, when the RTC sold the Building to PAI, the RTC was engaging in a kind of activity in which it is expressly authorized by statute to engage. Therefore, even assuming arguendo, that (as alleged by Ward) the RTC exercised the power or function of selling the Building in a way that failed to maximize the net present value return or to afford fair and consistent treatment to all offerors, Ward could not prevail. For, even if the RTC improperly or unlawfully exercised an authorized power or function, it clearly did not engage in an activity outside its statutory powers. Yet only the latter type of act could conceivably subject the RTC to injunction or rescission as an exception to the anti-injunction provisions of § 1821(j)—a possibility we need not, and therefore do not, consider today.

When the RTC determines the method, terms and conditions of the disposition of assets, it is indisputably exercising its discretion and judgment in administering the affairs of a failed or troubled financial institution through liquidation of receivership assets. As noted by the Third Circuit in *Gross,* so long as the RTC is "exercis[ing] judgment under one of its enumerated powers," such as it did here in conducting the affairs of the thrift that owned the Building or disposing of assets, such as the Building, which the RTC acquired from such a thrift, courts may not enjoin an activity on the basis

of an allegation that the RTC is not "running [the institution's] affairs in a legal manner."[10]  The *Gross* court observed that "[when] the RTC performs functions assigned to it under the statute, injunctive relief will be denied even where the RTC acts in violation of other statutory schemes," such as ERISA.[11]  And *rescission* is even more problematical than *injunction.*  The Sixth Circuit recently held that § 1821(j) precludes rescission as a remedy in cases such as the one now before us.[12]  The First Circuit has held that mootness is implicated once the property in question has been sold to a third party.[13]

Like the FDIC in *National Trust for Historic Preservation,*[14] the RTC here exercised the powers and functions of a receiver.  "An injunction against the planned sale would surely "restrain or affect' the [RTC's] exercise of those powers and functions"[15] in violation of § 1821(j)'s unconditional and unequivocal directive that "[n]o court may take any action to restrain or affect the exercise of powers or functions of [the RTC] as a conservator or a receiver."[16]

In *National Trust for Historic Preservation,* the D.C. Circuit refused to enjoin the sale even though the plaintiffs had no other remedy.  That court stated that "[t]he *South Carolina v. Reagan* decision does not stand for the proposition that whenever any statute bars injunctive relief, the courts are to ignore the statutory restriction if the plaintiff cannot obtain adequate judicial relief by some other method....  To hold that the lack of an adequate alternative remedy renders § 1821(j)'s bar against restraining orders inoperative would therefore be tantamount to rendering the provision

---

[10]*Id.* at 408.

[11]*Id.* at 407.

[12]*United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320 (6th Cir.1993).

[13]*Oakville Development Corp. v. FDIC,* 986 F.2d 611 (1st Cir.1993).  We do not address the issue of mootness because we find here that § 1821(j) deprives us of jurisdiction.  We note in passing, however, that here the purchaser of the subject property, PIA, was made a party defendant by Ward from the outset, so this case could possibly be distinguished from *Oakville Development* and others in the mootness context.

[14]--- F.2d ----, 1993 WL 183508, 1993 U.S.App. LEXIS 12588 (D.C.Cir.1993).

[15]*Id.* at ----, 1993 WL 183508 at *1, 1993 U.S.App. LEXIS at *3.

[16]12 U.S.C. § 1821(j).

entirely ineffective."[17] Unlike those plaintiffs, Ward does have a method for relief, albeit one he did not seek, i.e., monetary damages through the mandatory administrative procedures set forth in FIRREA.[18]

### III

### CONCLUSION

"In disposing of the assets of a bank, the [RTC] is performing a routine "receivership' function that § 1821(j) unequivocally removes from judicial restraint."[19] Like injunction, rescission is a "judicial restraint" that is barred by 1821(j). Sale of property acquired by the RTC from a failed institution, or administered by the RTC as conservator or receiver of such an institution, is beyond cavil a statutory power and function of the RTC. "In liquidating assets it has obtained pursuant to 12 U.S.C. § 1823 ... the [RTC] is acting squarely within its statutory "powers and functions.' "[20] We hold that, regardless of whether the RTC's disposition of the Building may have involved an inadequate price, inadequate competition, unequal treatment of Ward as a potential offeror, or failure of the RTC to make a determination regarding "maximizing" the net present value return on the sale, the district court had no jurisdiction to enjoin *or rescind* the sale. It follows inescapably that we, as reviewing court, are equally without jurisdiction.[21] Ward's appeal is, therefore,

DISMISSED.

---

[17]*National Trust,* --- F.2d at ----, 1993 WL 183508, *7, 1993 U.S.App. LEXIS 12588, *4 (citing *South Carolina v. Reagan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984)).

[18]12 U.S.C. § 1821(d)(3)-(13).

[19]*National Trust,* --- F.2d at ----, 1993 WL 183508, *3, 1993 U.S.App. LEXIS 12588, *8.

[20]*Id.* at ----, 1993 WL 183508 at *2, 1993 U.S.App. LEXIS at *7.

[21]As the instant case involves the activities of the RTC as conservator and receiver exclusively, and never in its corporate capacity, today's holding is consistent with our recent holding in *Sierra Club v. FDIC,* 992 F.2d 545, (5th Cir.1993), in which we considered activities of the FDIC in its corporate capacity only. *See, e.g., id.* at 548 & n. 3.