IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1329

Summary Calendar

_____

JOHN H. CARNEY and
JAMES R. FISHER, a/k/a
Bill Fisher,

                    Plaintiffs-Appellants,

versus

RESOLUTION TRUST CORPORATION,
as receiver for MeraBank Savings,
in its corporate capacity and as
conservator of New MeraBank Texas,
FSB El Paso, Texas, as receiver for
MeraBank Savings,
                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
(April 14, 1994)

ON PETITION FOR REHEARING
(Opinion January 11, 1994, 5th Cir. 1994, 10 F.3d 1164)

Before KING, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

PER CURIAM:

The opinion in this case filed on January 11, 1994, and

reprinted at 10 F.3d 1164 (5th Cir. 1994), is withdrawn and the

following opinion is substituted therefor.

John H. Carney and James R. Fisher brought a declaratory

judgment action against the Resolution Trust Corporation (RTC) in

its corporate capacity and its capacities as receiver for MeraBank Texas, FSB El Paso, Texas (MeraBank), and as conservator of New MeraBank Texas, FSB El Paso, Texas (New MeraBank). Carney and Fisher also asserted pendent state law claims. The district court granted the RTC's motion to dismiss. Carney and Fisher appeal. We affirm in part, reverse in part, and remand the case to district court.

## I.  FACTS AND PROCEDURAL HISTORY

Monzer Attar brought an action in the 364th District Court of Lubbock County (the state court action) seeking damages from MeraBank and EquiSource Realty Corporation (EquiSource). On May 30, 1991, the Office of Thrift Supervision (OTS) appointed the RTC as receiver for MeraBank and as conservator of New MeraBank. The RTC as receiver for MeraBank was substituted for MeraBank in the state court action as the party defendant.

On September 23, 1991, the RTC as receiver for MeraBank filed a motion requesting permission from the state court to file a third party action against Carney and Fisher, former officers of EquiSource. Carney and Fisher then filed their original complaint in federal district court on December 18, 1991, against the RTC as receiver for MeraBank seeking a resolution of the matters in controversy in the state court action. Carney and Fisher asserted that the district court had jurisdiction to decide the declaratory judgment action under 28 U.S.C. § 1346.

On December 26, 1991, the RTC as conservator of New MeraBank filed a third party petition against Carney and Fisher in the

state court action alleging that the damages that Monzer Attar sought were caused by EquiSource and by Carney and Fisher, individually. The RTC as conservator of New MeraBank had previously intervened in the state court action because it owned the claims asserted against Carney and Fisher. The RTC then filed its answer and a motion to dismiss Carney and Fisher's complaint. The RTC argued that Carney and Fisher's complaint should be dismissed because 28 U.S.C. § 1346 does not authorize the award of declaratory relief against the United States.

Carney and Fisher then moved for leave of the court to file an amended complaint, which the district court granted. On March 12, 1992, Carney and Fisher filed their first amended complaint. In their first amended complaint, Carney and Fisher asserted, in addition to their claim for declaratory relief, injunctive relief for denial of due process, monetary damages for intentional infliction of emotional distress, and injunctive relief and monetary damages for tortious interference with prospective contractual relations. Additionally, they asserted that the district court had jurisdiction pursuant to 28 U.S.C. §§ 1346, 1338.

On March 23, 1992, the RTC as receiver for MeraBank filed a motion to dismiss Carney and Fisher's first amended complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim for which relief could be granted. The district court granted the RTC's motion. The district court determined that it lacked subject matter jurisdiction under 28

3

U.S.C. §§ 1346, 1338. Carney and Fisher then filed a motion for reconsideration. In their motion for reconsideration, Carney and Fisher argued that the district court did have jurisdiction in this case pursuant to 12 U.S.C. § 1441a(*l*)(1), the Federal Home Loan Bank Act. Carney and Fisher further argued that the reference in their complaint to § 1338 was a typographical error and that the complaint should have stated § 1331. The district court reinstated the case and vacated its prior order. On April 3, 1992, the OTS replaced the RTC as conservator of New MeraBank with the RTC as receiver for New MeraBank.

On September 4, 1992, Carney and Fisher filed their second amended complaint. In their second amended complaint, Carney and Fisher asserted that their claims were against the RTC in its corporate capacity and in its capacities as receiver for MeraBank and as conservator of New MeraBank. Carney and Fisher also stated that the district court had jurisdiction to hear the case under the Federal Home Loan Bank Act, 12 U.S.C. § 1441a(*l*)(1).

The RTC then filed a motion to dismiss Carney and Fisher's second amended complaint. The RTC alleged three grounds for dismissal: (1) lack of subject matter jurisdiction, (2) failure to state a claim for which relief could be granted, and (3) pendency of a state court action which will serve to resolve all issues between the parties. The district court determined that it lacked subject matter jurisdiction over Carney and Fisher's claims for monetary damages because § 1821(d)(13)(D) of the Financial Institutions Reform, Recovery, and Enforcement Act

4

(FIRREA) precluded Carney and Fisher from asserting those claims against the RTC before exhausting their administrative remedies. Therefore, the district court dismissed Carney and Fisher's claims for monetary damages for intentional infliction of emotional distress and tortious interference with prospective contractual relations because it lacked subject matter jurisdiction over those claims.

The district court went on to determine that FIRREA's jurisdictional bar in § 1821(d)(13)(D) did not preclude the plaintiffs from pursuing injunctive and declaratory relief against the RTC. However, the district court determined that Carney and Fisher's claims for injunctive relief for denial of due process and tortious interference with prospective contractual relations should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief could be granted. Finally, the district court also dismissed Carney and Fisher's request for a declaratory judgment.

## II. STANDARD OF REVIEW

We review the district court's dismissals under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) de novo. <u>Benton v. United States</u>, 960 F.2d 19, 21 (5th Cir. 1992). We take the allegations of the complaint to be true, and we will not affirm the district court's dismissal unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. <u>Id.</u>

III.  DISCUSSION

A.  CLAIMS FOR MONETARY DAMAGES

Initially, Carney and Fisher allege that the district court erred in determining that it did not have subject matter jurisdiction over their claims for monetary damages.  Subject matter jurisdiction is determined at the time that the complaint is filed.  Rosa v. Resolution Trust Co., 938 F.2d 383, 392 n.12 (3d Cir.), cert. denied, 112 S. Ct. 582 (1991); F. Alderete Gen. Contractors v. United States, 715 F.2d 1476, 1480 (Fed. Cir. 1983).  The district court determined that at the time Carney and Fisher filed their second amended complaint the RTC had been named as receiver for New MeraBank and that, therefore, the jurisdictional bar of FIRREA required Carney and Fisher to exhaust their administrative remedies before it could obtain jurisdiction over their claims for monetary damages against the RTC.  Carney and Fisher argue, however, that their second amended complaint relates back to the time that they filed their first amended complaint and that FIRREA's jurisdictional bar would not therefore apply to their claims for monetary damages because they filed their first amended complaint before the RTC was named as receiver.

In Sessions v. Rusk State Hosp., we stated that

> [a] complaint that is defective because it does not allege a claim within the subject matter jurisdiction of a federal court may be amended to state a different claim over which the federal court has jurisdiction.  If the claim asserted in the amendment arises out of the conduct or occurrence set forth in the original complaint, the amendment is given retroactive effect to the date the original complaint was filed.

6

648 F.2d 1066, 1070 (5th Cir. 1981) (citations omitted). Relation back to the date of the original filing applies even when the amendment states a new basis for subject matter jurisdiction. Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 887 (3d Cir. 1992) (determining that when the plaintiffs amended their complaint to establish diversity jurisdiction the amendment related back to the date of the filing of the original complaint so that the statutory requirement of $10,000 to establish diversity jurisdiction applied instead of the new $50,000 requirement); 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.15[3.—2], at 15-154 (2d ed. 1993) (noting that an amendment which changes the jurisdictional basis of an action will relate back to the date of the filing of the original complaint, if the factual situation alleged otherwise remains unaltered); 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1497, at 80 (2d ed. 1990) ("Amendments curing a defective statement of subject matter jurisdiction . . . will relate back."). In this case, the district court should have determined whether Carney and Fisher's second amended complaint related back to the time that they filed their original complaint or their first amended complaint. For purposes of this appeal, however, we need not determine whether Carney and Fisher's second amended complaint should be characterized as relating back to the time of the filing of the original complaint or the first amended complaint. Under either scenario, Carney and Fisher would have

7

filed their claims for monetary damages before the RTC was appointed receiver for New MeraBank.

We now address Carney and Fisher's argument that because they filed their claims for monetary damages before the RTC was appointed receiver for New MeraBank, FIRREA's jurisdictional bar does not apply to those claims. Section 1821(d)(13)(D) of FIRREA provides that:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>     (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>     (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (Supp. IV 1992). In Meliezer v. Resolution Trust Co., we determined that § 1821(d)(13)(D) of FIRREA deprived a district court of subject matter jurisdiction over claims brought against the RTC after the RTC was appointed receiver of a depository institution. 952 F.2d 879, 881-82 (5th Cir. 1992). In this case, however, the claims asserted by Carney and Fisher against the RTC relate back to a date before the RTC was appointed receiver of New MeraBank. The question presented here is whether claims filed, under a relation back theory, before the RTC is appointed receiver are also subject to FIRREA's jurisdictional bar.

We note initially that FIRREA makes participation in the administrative claim review process mandatory, regardless of whether the claims were filed before or after the RTC was

appointed receiver of the failed institution.  Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993); Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992); Resolution Trust Corp. v. Mustang Partners, 946 F.2d 103, 106 (10th Cir. 1991); see Meliezer v. Resolution Trust Co., 952 F.2d 879, 882 (5th Cir. 1992) (holding that FIRREA establishes a statutory exhaustion requirement).  Naturally, the RTC argues that FIRREA's jurisdictional bar applies to both pre- and post- receivership claims.  However, we agree with other circuits that have addressed this issue and conclude that when claims for monetary damages are brought before the RTC is appointed receiver, a court continues to have subject matter jurisdiction over those claims. Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1003 (4th Cir. 1994); Marquis, 965 F.2d at 1152-53; Rosa v. Resolution Trust Corp., 938 F.2d 383, 392 (3d Cir.), cert. denied, 112 S. Ct. 582 (1991).  Several sections of FIRREA support this conclusion.  For example, § 1821(d)(6)(A) permits a claimant "to continue an action commenced before the appointment of the receiver" after the RTC has denied the claim.  Additionally, § 1821(d)(5)(F)(ii) provides that the filing of a claim "with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver."  It appears clear to us that a claimant could not "continue" an action that should have been dismissed.  Marquis, 965 F.2d at 1152-53 (noting that because § 1821(d)(5)(F)(ii) refers to a claimant's right to continue an action, Congress did

9

not intend for the action to be dismissed); <u>Guidry v. Resolution Trust Corp.</u>, 790 F. Supp. 651, 653 (E.D. La. 1992) (noting that the word <u>continue</u> in §§ 1821(d)(5)(F)(ii), (d)(6)(A) "strongly infers that the court retains jurisdiction over a case that is filed before a receiver is appointed"); <u>Coston v. Gold Coast Graphics, Inc.</u>, 782 F. Supp. 1532, 1535 (S.D. Fla. 1992) (stating that "the term 'continue' in <u>both</u> § 1821(d)(5)(F)(ii) and § 1821(d)(6)(A) indicates that the Court is not deprived of jurisdiction over the action").  Therefore, we conclude that because Carney and Fisher filed their claims against the RTC before the RTC was appointed receiver of New MeraBank, the district court had subject matter jurisdiction over their claims.

However, our conclusion that the district court had subject matter jurisdiction over Carney and Fisher's claims for monetary damages against the RTC does not necessarily mean that Carney and Fisher can assert their administrative and judicial remedies concurrently.  Congress enacted FIRREA to create an efficient method for processing claims against failed banks.  <u>Meliezer v. Resolution Trust Co.</u>, 952 F.2d 879, 881 (5th Cir. 1992).  It appears clear to us that allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA.  We conclude, as other courts have done, that FIRREA creates a "scheme under which courts will retain jurisdiction over pending lawsuitsSQsuspending, rather than dismissing, the suitsSQsubject to a stay of proceedings as may be appropriate to permit

10

exhaustion of the administrative review process as it pertains to the underlying claims."  Marquis, 965 F.2d at 1154; see also Guidry, 790 F. Supp. at 654-55; In re FDIC, 762 F. Supp. 1002, 1004 (D. Mass. 1991).[1]

In summary, the district court erred in dismissing Carney and Fisher's claims for monetary damages against the RTC for lack of subject matter jurisdiction.

### B.   CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF

1.   *Injunctive relief*

The RTC asserts that § 1821(j) deprived the district court of subject matter jurisdiction over Carney and Fisher's claims for injunctive relief.  Section 1821(j) provides:

(j) Limitation on court action

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

In Ward v. Resolution Trust Corp., 996 F.2d 99, 102-04 (5th Cir. 1993), we determined that § 1821(j) deprived the district court

---

[1] The House Report discussing FIRREA's administrative review process further supports our conclusion.  The report states:
The agency's determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period.  A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice.  Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim.  Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC.  H.R. REP. NO. 101-54(I), 101st Cong., 1st Sess. 418 (1989), reprinted in 1989 U.S.C.A.A.N. 86, 214 (emphasis added).

of subject matter jurisdiction over a party's claim seeking the rescission of a sale of property by the RTC.  In <u>Ward</u>, we stated that

> even if the RTC improperly or unlawfully exercised an authorized power or function, it clearly did not engage in an activity outside its statutory powers.  Yet only the latter type of act could conceivably subject the RTC to injunction or rescission as an exception to the anti-injunction provisions of § 1821(j)SQa possibility we need not, and therefore do not, consider today.

<u>Id.</u> at 103.  Therefore, in the instant case, if Carney and Fisher are attempting to enjoin the RTC from exercising an authorized power or function of the RTC, then § 1821(j) deprives the district court of subject matter jurisdiction over the action.

In connection with Carney and Fisher's claims for denial of due process and tortious interference with prospective contractual relations, Carney and Fisher sought, <u>inter alia</u>, to enjoin the RTC from (1) making any statement that they converted funds or are individually liable for the conduct of EquiSource and (2) attempting to engage them in the state court action. According to the RTC, the relief that Carney and Fisher request would prevent the RTC from exercising its statutory authority to "collect all obligations and money due" and to "preserve and conserve the assets and property of" a failed financial institution.  12 U.S.C. §§ 1821(d)(2)(B)(ii), (iv).[2]

---

[2] In full, section 1821(d)(2)(B) provides:

(B) Operate the institution

The Corporation may, as conservator or receiverSQ

(i) take over the assets of and operate the

12

We agree with the RTC that § 1821(j) deprived the district court of subject matter jurisdiction over Carney and Fisher's claims for injunctive relief against the RTC. The RTC's ability to seek damages from Carney and Fisher for losses that they caused the failed financial institution is clearly within the RTC's statutory powers. The district court does not have subject matter jurisdiction over Carney and Fisher's claims for injunctive relief.

2. *Declaratory relief*

The RTC also asserts that § 1821(j) deprived the district court of subject matter jurisdiction over Carney and Fisher's claim for declaratory relief. In support of this argument the RTC relies on Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491 (5th Cir. 1988) (en banc), cert. denied, 490 U.S. 1035 (1989), and California v. Grace Brethren Church, 457 U.S. 393 (1982).

In Jackson, Leroy Jackson brought suit in state court against the Texas Employer's Insurance Association (TEIA) seeking damages for mental anguish, stress, and anxiety consequent on

---

insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

     (ii) collect all obligations and money due the institution;

     (iii) perform all functions of the institution in the name of the institution which is consistent with the appointment as conservator or receiver; and

     (iv) preserve and conserve the assets and property of such institution.

13

TEIA's alleged fraud and bad faith in having delayed payment of his Longshore and Harbor Workers' Compensation Act (LHWCA) benefits. Id. at 493. After the state suit had proceeded for about a year, TEIA filed suit in federal district court seeking to enjoin Jackson's prosecution of the state suit and to declare that Jackson's state law claims were preempted by the LHWCA. Id. The district court enjoined Jackson's prosecution of the state court action and rendered a declaratory judgment that his state law claims were preempted by the LHWCA. Id.

Sitting en banc, this court determined that the Anti-Injunction Act, 28 U.S.C. § 2283, prevented the district court from issuing an injunction against Jackson's prosecution of his state court action. Id. at 497-504. We also determined that the Anti-Injunction Act prevented the district court from rendering the declaratory relief which TEIA sought. Id. at 504-08. In reaching this conclusion, we initially determined that

> TEIA's federal action was not to resolve a controversy that existed independently of Jackson's state suit; nor was it to decide some other controversy, with merely incidental effect on the state suit. It is plain that the only purpose and effect of TEIA's federal suit was to defeat Jackson's state suit against it . . . .

Id. at 505. We further stated that to allow the TEIA declaratory relief in the circumstances of the case would provide the TEIA with an end run around § 2283 and render the section a "minor technicality." Id. Thus, § 2283 could easily be avoided by "mere nomenclature or procedural sleight of hand" because a federal declaratory judgment would be res judicata of the issues decided in the case and could then be enforced by injunction

14

pursuant to section 2202.  Id.  Therefore, we held in Jackson that "'[i]f an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction.'"  Id. at 506 (quoting CHARLES A. WRIGHT, FEDERAL COURTS § 47, at 285 (4th ed. 1983)).

Likewise, in California v. Grace Brethren Church, 457 U.S. 393, 407-19 (1982), the Supreme Court determined that the Tax Injunction Act, 28 U.S.C. § 1341, deprived the district court of subject matter jurisdiction to declare a state tax law unconstitutional and to enjoin the state defendants from collecting taxes under the statute.  The Tax Injunction Act provides that the district courts "shall not enjoin, suspend or restrain the . . . collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  In concluding that the Act deprived the district court of subject matter jurisdiction to issue declaratory as well as injunctive relief, the Court stated that

> [b]ecause the declaratory judgment "procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended," the very language of the Act suggests that a federal court is prohibited from issuing declaratory relief in state tax cases. Additionally, because there is little practical difference between injunctive and declaratory relief, we would be hard pressed to conclude that Congress intended to prohibit taxpayers from seeking one form of anticipatory relief against state tax officials in federal court, while permitting them to seek another, thereby defeating the principal purpose of the Tax Injunction Act: "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."

15

Id. at 408-09 (citations and footnotes omitted).

The RTC argues that the logic of Jackson and Grace Brethren Church compels this court to determine that just as § 1821(j) deprives the district court of jurisdiction over Carney and Fisher's claims for injunctive relief, so too does § 1821(j) deprive the district court of jurisdiction over their claim for declaratory relief.  Indeed, we have already held that claims other than claims for injunctive relief may be barred by § 1821(j).  In Ward v. Resolution Trust Corp., 996 F.2d 99, 104 (5th Cir. 1993), we held that "[l]ike injunction, rescission is a 'judicial restraint' that is barred by 1821(j). . . . [T]he district court had no jurisdiction to enjoin or rescind the sale."  Id. at 104; see also United Liberty Life Ins. v. Ryan, 985 F.2d 1320, 1328-29 (6th Cir. 1993) (concluding that the district court did not have subject matter jurisdiction over the plaintiff's claim seeking to rescind a transfer of a failed institution's assets because such an order would limit the RTC's exercise of power).

In the present case, Carney and Fisher sought a declaratory judgment by the district court that they were not liable to the RTC for the conduct of EquiSource.  Carney and Fisher filed their original complaint after the RTC had already filed a motion requesting permission from the state court to file a third party action against Carney and Fisher.  Further, in their original complaint, Carney and Fisher asserted that "on or about November 22, 1991, [Defendant] filed an Amended Motion for Leave to Bring

16

Third-Party Action against John H. Carney and James R. (Bill) Fisher, Plaintiffs in the suit now before the Court."  They also asserted that "Plaintiffs are in great doubt as to the potential liability in the case referenced above, and desire an efficient resolution of this matter prior to embroiling themselves in extensive and pointless litigation."  Moreover, Carney and Fisher stated that "Plaintiffs seek declaratory judgment that any claims, actions, or otherwise asserted [sic] or which may be asserted by Defendant against Plaintiffs, are claims for which Plaintiffs have no individual capacity and at all times acted solely as Officers of EquiSource Realty Corporation."  It is clear that Carney and Fisher attempted to enjoin the RTC from including them in the state court action under the guise of bringing a declaratory judgment action in federal court.  Thus, Carney and Fisher's claim for declaratory relief was an attempt to "restrain or affect" the RTC's ability to exercise its authorized powers or functions just as completely as an injunction would.  Therefore, we conclude that, under the specific facts of this case, § 1821(j) deprived the district court of jurisdiction over Carney and Fisher's claim for declaratory relief.[3]

---

[3] Naturally, we do not hold that § 1821(j) would bar all actions for declaratory relief against the receiver of a failed financial institution.

IV.

For the foregoing reasons, we REVERSE the district court's determination that it did not have subject matter jurisdiction over Carney and Fisher's claims for monetary damages, AFFIRM the district court's dismissal of Carney and Fisher's claims for injunctive and declaratory relief on the ground that the district court lacked subject matter jurisdiction over those claims, and REMAND for proceedings consistent with this opinion.

The mandate shall issue forthwith.