**CENTENNIAL ASSOCIATES LIMITED PARTNERSHIP, a New Jersey Limited Partnership; Piscataway Associates, a New Jersey Limited Partnership; Office Campus, Inc., a New Jersey Corporation; and the Estate of Lawrence Zirinsky, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION; J & M Land Company, a New Jersey business entity; Richard Simon, Trustee, a New Jersey business entity; Richard Simon; Jake Simon; Herman Zell; Joseph Wolfson, and Mrs. Zell, spouse of Herman Zell; and Mrs. Wolfson, spouse of Joseph Wolfson, Defendants.**

Civil Action No. 96–707 (JCL).

United States District Court,
D. New Jersey.

May 16, 1996.

Ralph P. Ferrara, Ferrara, Siberine, Woodford & Rizzo, Warren, NJ, for Plaintiffs.

David L. Creskoff, Beverly Porway, Federal Deposit Insurance Corp., New York Legal Services Office, Jersey City, NJ, Ilana Volkov, Michael D. Sirota, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ, for Defendants.

## OPINION

LIFLAND, District Judge.

Before the Court is defendant Federal Deposit Insurance Corporation's ("FDIC's") motion to dismiss the Complaint and Cross–Claim for lack of subject matter jurisdiction and/or because this Court lacks jurisdiction to provide the requested relief.[1] According to the FDIC, the plaintiffs' and cross-claimants' claims have not been formally reviewed as part of the receiver's administrative claims review process, a statutory prerequisite to an action in a federal district court. *See* 12 U.S.C. §§ 1821(d)(6)(A) and 1821(d)(13)(D). The FDIC also contends that 12 U.S.C. § 1821(j) divests this Court of jurisdiction to order the specific performance and rescission prayed for in the Complaint. The plaintiffs respond that the statutory exhaustion mandate does not apply in this case and, in any event, was satisfied on this record. For reasons set forth at the May 13, 1996 hearing, as more fully explicated below, the Court will grant the FDIC's motion and dismiss the Complaint and Cross–Claim against it.

### Background

Centennial Associates Limited Partnership and Piscataway Associates ("C & P") own two adjoining tracts of land located in Piscataway, New Jersey ("Property"). On June 20, 1984, C & P executed two promissory notes ("Notes") to The Howard Savings Bank ("HSB"), a New Jersey chartered depository institution.[2] First and second mortgages on

C & P's Property secured the Notes and were duly recorded with the Clerk of Middlesex County on July 28, 1984. Some four years later, defendant Simon purchased and recorded two tax sale certificates covering the Property.

On October 2, 1992, the New Jersey Commissioner of Banking declared HSB unsafe and unsound and appointed the FDIC receiver pursuant to 12 U.S.C. § 1821(c)(3).[3] Two years later, on December 14, 1994, C & P representatives Andrew Billing and Robert Fogel met with Simon/J & M Land Company ("J & M") representative Herman Zell and one other representative of the Simon/J & M organizations to discuss a proposed joint venture to market and sell the Property. At this meeting, Fogel advised Zell that C & P was prepared to negotiate the purchase of the FDIC mortgages.

Thereafter, C & P continued the negotiations that had actually commenced prior to the December 14, 1994 meeting with Simon/J & M. By January 30, 1995 letter, C & P's managing agent advised the FDIC of its intent to settle and compromise the debt represented and secured by the First and Second Mortgage. After C & P requested that the FDIC identify its responsible account representative, the receiver identified John Haiduk, a credit specialist with the Corporation. On April 26, 1995, Haiduk told C & P that, "subject to formal FDIC and Bankruptcy court approval, [he was] willing to propose acceptance of $125,000 from your Management Committee in full settlement of all claims held by the FDIC in its Receivership capacity for Howard Savings Bank, arising from the bankruptcy proceedings of Piscataway/Centennial Associates. In exchange, the FDIC will release its security interests in the corresponding real estate." *See* Fogel Certification, Ex. A. C & P accepted Haiduk's proposal and instructed him

---

1. Although the cross-claimants have submitted no formal papers, the Court is advised that they support the FDIC's motion.

2. The principal amounts of the two promissory notes were $3,940,000 and $300,000 respectively.

3. 12 U.S.C. § 1821(c)(3) provides: "Whenever the authority having supervision of any insured State depository institution (other than a District depository institution) appoints a conservator or receiver for such institution and tenders appointment to the Corporation, the Corporation may accept such appointment."

to seek formal FDIC approval of the transaction. *See id.*, Ex. B.

Apparently, the FDIC never approved the proposed settlement, but instead assigned the subject mortgages to defendant Simon for $5,000, 25 times less than the amount that the FDIC allegedly agreed to accept from plaintiffs. Shortly thereafter, the FDIC authorized Simon to modify the Assignment of Mortgage to identify J & M as the Assignee, and the modified document was recorded on July 28, 1995.

Once plaintiffs discovered that the FDIC had breached the alleged settlement agreement, it attended a meeting at the FDIC's regional office in East Hartford, Connecticut. C & P was represented at the meeting by its principal, Andrew Billing, and counsel, and the FDIC was represented by an account representative, Jin Choi, and its counsel, Wes Faison. When asked whether the FDIC would honor the alleged settlement agreement with C & P, Messrs. Choi and Faison indicated that the receiver had no intention of overturning or otherwise reversing its assignment of mortgages to Simon/J & M. *See id.* at ¶ 16. This litigation ensued.

Notwithstanding the claim-disposition authority plaintiffs impute to Choi and Faison, Gail Verley, the FDIC's Assistant Regional Manager of Closed Bank Administration, states that Choi is not in the Claims Department so his activity is subject to the independent review of the Claims Department. The Claims Department is a specialized unit of 16 employees charged with claim intake, analysis, investigation and, when necessary, rendering a determination of allowance or disallowance of claims tendered against the corporation as receiver of a failed institution. *See* Verley Cert. at ¶¶ 2–4.

## Discussion

This case demonstrates how even the most rudimentary breach of contract/negligence action can pose nettlesome jurisdictional problems when it arises in the context of a bank failure, thereby implicating the elaborate statutory structure Congress fashioned to reckon with the crisis that afflicted the thrift industry in the late 1980s. Although the structure erected by the Financial Institutions Reform and Recovery Enforcement Act ("FIRREA") has been well-chronicled by courts up to now, an overview of the pertinent provisions remains useful.

### Overview of FIRREA

As the Third Circuit has recounted, to reform and bolster public confidence in the troubled savings and loan industry, Congress, in 1989, enacted FIRREA, the most ambitious thrift reform law in American history. FIRREA created a new regulatory agency, the Resolution Trust Corporation, and empowered it and the FDIC to manage, sell, merge, consolidate, or liquidate failed institutions for which they were appointed receiver. *See* 12 U.S.C. §§ 1821(d)(2) and 1441a(b)(4). *See generally Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49 (3d Cir.1991); *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir.1991).[4] The statute also created a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution.

Under 12 U.S.C. § 1821(d)(3), the FDIC as receiver of an insolvent bank initiates this process by giving prompt notice to the institution's creditors: the receiver shall "promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such

---

4. For purposes of this case, the FDIC's regulatory authority over insured depository institutions is coextensive with the RTC's authority over failed institutions. *See* 12 U.S.C. § 1441a(b)(4) (making applicable to the RTC sections 11, 12 and 13 of the Federal Deposit Insurance Act, as amended, 12 U.S.C. §§ 1821–1823); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 n. 10 (3d Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *In re Parker North*

*American Corp.*, 24 F.3d 1145 (9th Cir.1994). Accordingly, the reasoning of cases that interpret the jurisdictional nature of FIRREA for the RTC applies with equal force to analysis of the issue for the FDIC. *See Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 62 n. 11 (3d Cir.1991); *In re Parker*, 24 F.3d at 1150 n. 5; *FDIC v. diStefano*, 839 F.Supp. 110, 119 n. 4 (D.R.I.1993). Where relevant, the Court cites both.

notice...." 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC must also mail a similar notice to any creditor shown on the institution's books. *See* 12 U.S.C. § 1821(d)(3)(C); *National Union Fire Insurance Company of Pittsburgh, PA. v. City Savings, F.S.B.,* 28 F.3d 376, 383 ·(3d Cir.1994). This specified date is known as the "bar date" and, except as discussed below, claims not filed with the FDIC before that date are deemed disallowed. *See* 12 U.S.C. § 1821(d)(5)(C)(i). *But see* 12 U.S.C. § 1821(d)(5)(C)(ii) (authorizing FDIC review of post-"bar date" claims in certain situations).

If the FDIC denies a properly-filed creditor claim or fails to render a decision within the allotted 180–day period, the claimant has 60 days to: 1) request an administrative review of the claim; 2) file suit on the claim in the district court for the District of Columbia or in the district court in the district where the failed institution's principal place of business is located; or 3) continue a judicial action commenced prior to the appointment of a receiver. *See* 12 U.S.C. § 1821(d)(6)(A); *Praxis,* 947 F.2d at 63. If the claimant elects to commence or continue a lawsuit, the court determines *de novo* the claim against the FDIC as receiver. *See id.*

By circumscribing opportunities for judicial review, FIRREA explicitly limits a claimant's ability to bypass the above procedures:

> Except as otherwise provided in this subsection [i.e. in 12 U.S.C. § 1821(d)(6) ], no court shall have jurisdiction over—
>
> > (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> >
> > (ii) any claim relating to any act or omission of such institution or Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). Essentially, this provision enunciates a statutory exhaustion requirement and deprives a district court of subject matter jurisdiction where a claimant fails to comply with the statute's directive. *See National Union Fire Insurance Compa-*

*ny,* 28 F.3d at 383; *Rosa v. Resolution Trust Corporation,* 938 F.2d 383, 391–392 (3d Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). A claimant must exhaust claims predicated on receiver misconduct, which as here arise after appointment of the receiver and possibly after the bar date. *See id.* at 391–394. This design facilitates Congress' goal that the FDIC (or RTC) promptly determine claims so as to efficiently and expeditiously resolve claims against a failed institution without recourse to litigation. *See* H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 418–419, reprinted in 1989 *U.S.Code Cong. & Admin.News* 86, 214–215.

With this understanding of FIRREA, the Court now returns to the facts and argument presented in the instant motion. Plaintiffs aver that the FDIC, after its appointment as Receiver for HSB, breached a settlement contract with them and/or negligently failed to follow statutory guidelines governing the disposition of institution assets. They pray for rescission of the FDIC/J & M Land contract and a decree requiring the FDIC to specifically perform the contract with plaintiffs. In the alternative, they demand damages to compensate them for the injuries caused by the FDIC's conduct as receiver. The FDIC submits that the plaintiffs and cross-claimants have not filed a formal claim with the FDIC, thus failing to satisfy the statutory exhaustion requirement and destroying this Court's jurisdiction. It also asserts that the Court lacks jurisdiction to order rescission and specific performance. Plaintiffs respond that the claims process outlined in § 1821(d) does not apply in this case and, assuming *arguendo* that § 1821(d) applies, they contend that their meeting with FDIC officials satisfied the requirement. The Court will first examine plaintiffs' monetary damages claims.

**Monetary Damages Claims**

 It is clear that plaintiffs' negligence and contract damages claims fall within the categories enumerated in FIRREA's exhaustion provision because they would, if successful, require payment from the assets of HSB, the depository institution for which the FDIC has been appointed receiver. *See* 12 U.S.C. § 1821(d)(13)(D)(i); *Rosa,* 938 F.2d at

393 (monetary claims were barred because recovery "will be satisfied, if at all, from the assets of [the failed institution] ... for which the RTC ha[d] been appointed receiver"). The damages claims also seem to fall within § 1821(d)(13)(D)(ii)'s bar to unexhausted claims arising out of the acts or omissions of the receiver.[5]

■ The fact that the plaintiffs and cross-claimants are not formal "creditors"[6] of the failed institution to whom notice must be sent under § 1821(d)(3)(B) is not, as plaintiffs imply, of any moment since § 1821(d)(13)(D) is a broadly-worded bar to suit. Indeed, claimants injured by post-bar date acts or omissions of the receiver will rarely be creditors that have received pre-bar date notice. For this reason, courts have afforded the jurisdictional bar broad application "to all manner of 'claims' and 'actions seeking a determination of rights with respect to' the assets of failed banks, whether those claims and actions are by debtors, creditors or others." *Freeman v. F.D.I.C.*, 56 F.3d 1394 (D.C.Cir.1995). *See also National Union Fire Insurance Company*, 28 F.3d at 392 (The jurisdictional bar "is not limited in its application to actions brought by creditors; it applies to debtors as well, and applies regardless of whether the action is asserting a right to payment."); *Rosa*, 938 F.2d 383 (3d Cir.1991); *Lloyd v. F.D.I.C.*, 22 F.3d 335 (1st Cir.1994). *But see Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269 (10th Cir.) (construing jurisdictional bar narrowly, so as not to bar claims arising after deadline for filing administrative claims), *cert. denied,* — U.S. —, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994). Since the FDIC has internal procedures in place to handle claims that accrue after the bar date, *see* FDIC's Reply at 2, 4, the Court finds nothing to prevent claimants alleging damages arising out of the post-bar date conduct

of the receiver from first presenting their money damages claims to the FDIC. *See Heno v. F.D.I.C.*, 20 F.3d 1204 (1st Cir.1994) (Heno II) (FDIC's internal manual procedures allowing post bar date claims are permissible construction of §§ 1821(d)(5)(C)(ii) and 1821(d)(13)(D) under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

■ The record lacks evidence that the plaintiffs presented their contract and tort damages claims to the FDIC, either at the East Hartford meeting with Jin Choi and Wes Faison, or by filing a claim with the Claims Department. There is no allegation that they discussed a financial settlement or indicated their estimation of damages incurred. Rather, the plaintiffs merely asked if the receiver would honor its alleged settlement contract with C & P and rescind the assignment to Simon/J & M, a course of action Choi and Faison rejected. *See* Fogel Cert. at ¶ 16. Given that "Congress made this statutory exhaustion requirement explicitly jurisdictional," *Rosa*, 938 F.2d at 395, the Court is not inclined to read Choi and Faison's refusal to revoke the mortgage assignment, even assuming it constituted a formal FDIC determination of the rescission claim, as a final and controlling determination of their monetary damages claims. Such an interpretation would frustrate the purpose inherent in § 1821(d)(13)(D). *See McGlothlin v. Resolution Trust Corp.*, 913 F.Supp. 15 (D.D.C.1996) (dismissing breach of contract and negligence claims where plaintiffs submitted fraudulent inducement claim to the RTC but did not "submit[ ] any claims ... based on negligence or breach of contract, nor ha[d] they submitted claims for the amount of damages they [sought] in [that]

---

**5.** Although the "act or omission" language is generally associated with the law of negligence, the plain language comprehends a breach of contract claim as well since here the alleged breach was caused by the FDIC's act of assigning the promissory notes to Simon/J & M Land Company. *See Rosa*, 938 F.2d at 394–395 (considering breach of contract claim within ambit of § 1821(d)(13)(D)(ii), although ultimately determining that the bar was inapplicable on that record); *Resolution Trust Corp. v. Wayne Coliseum Ltd.*, 793 F.Supp. 900, 904 n. 5 (D.Minn.

1992) (noting that breach of contract claim fell within scope of § 1821(d)(13)(D)(ii)'s "act or omission" clause).

**6.** Plaintiffs are HSB debtors that would become judgment-creditors if they obtain contract and/or tort damages. The cross-claimants are in contractual privity with the FDIC and could also become judgment-creditors of the FDIC after resolution of their claim.

[c]ourt"); *Aljaf Associates Limited Partnership v. F.D.I.C.*, 879 F.Supp. 515 (E.D.Pa. 1995) (exhaustion of breach of contract claim did not constitute exhaustion of fraud claim); *Cf. Rosa*, 938 F.2d at 395 ("We do not believe that requiring exhaustion of the monetary claims in this case would be futile. RTC's legal position in this litigation is not necessarily conclusive of the receiver's determination of plaintiffs' claims. If RTC as receiver were to allow and satisfy plaintiffs' claims in whole or in part, the dispute now before this court would be moot to that extent."). Accordingly, these claims must be dismissed for failure to exhaust the administrative claims review process.

**Non–Monetary Claims**

Plaintiffs also ask this Court to rescind the FDIC's assignment of the mortgage to J & M/Simon and to order the Corporation to specifically perform its alleged contract with plaintiffs. According to plaintiffs, the FDIC's assignment to J & M/Simon not only breached the FDIC/C & P contract, but also contravened statutory guidelines requiring maximization of the value of the failed institution's assets. This claim, as well, must be dismissed because the Court lacks jurisdiction to provide the requested relief. *See* 12 U.S.C. § 1821(j).

It is well-settled that Congress may limit the remedial jurisdiction of the lower federal courts. *See Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872 (1938). Accordingly, to prevent interference with the receiver's management or disposition of institution assets, Congress crafted a broad measure depriving courts of the power to grant injunctions, specific performance, rescissions and other orders that affect the receiver's exercise of its statutory powers:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j). *See RPM Investments, Inc. v. Resolution Trust Corp.*, 75 F.3d 618, 621 (11th Cir.1996) ("Like rescission, injunctions, and orders rescinding asset transfer,

the specific performance requested in this case would 'restrain or affect' the RTC in the exercise of its statutory powers."); *Freeman*, 56 F.3d at 1399 ("We conclude that under 12 U.S.C. § 1821(j) the district court could not have granted the [plaintiff's] pleas for non-monetary remedies, including injunctive relief, declaratory relief, and rescission of the promissory note.").

Although federal courts may restrain the FDIC where the Corporation is clearly acting outside its statutory powers, "where the [FDIC] performs functions assigned it under the statute, injunctive relief will be denied even where the [FDIC] acts in violation of other statutory schemes or exercises judgment under one of its enumerated powers." *Gross v. Bell Sav. Bank PaSA*, 974 F.2d 403, 407–408 (3d Cir.1992) (citations omitted). *See also Rosa*, 938 F.2d at 397. Since federal law empowers a receiver "to realize upon the assets of the institution", 12 U.S.C. § 1821(d)(2)(E), and to "transfer any asset or liability of the institution in default", 12 U.S.C. § 1821(d)(2)(G)(i)(II), the FDIC's assignment of mortgages here was a function assigned to it under the statute. For purposes of the requested non-monetary relief, then, it is irrelevant whether the receiver exercised its statutory authority unwisely or even illegally.

*Ward v. Resolution Trust Corp.*, 996 F.2d 99 (5th Cir.1993), is squarely on point. In that case, the plaintiff sought to rescind the RTC's conveyance of an institution asset to a third party, arguing that the receiver violated its statutory duty by disposing of an asset for a "viciously low price ... [thereby] frustrat[ing] the direct intent of Congress, and ... 'acting clearly outside of its statutory powers.' " *Ward*, 996 F.2d at 103. Rejecting Ward's argument, and relying upon the Third Circuit's decision in *Gross*, the court distinguished between exercising a function or power that is clearly outside the statutory authority of the receiver, and unlawfully exercising a function or power authorized by federal banking law. As in the case *sub judice*, it was beyond peradventure that the receiver acted within its statutorily authorized power when it sold institution assets. Thus, the court held that "regardless of

whether the RTC's disposition of the Building may have involved an inadequate price, inadequate competition, unequal treatment of Ward as a potential offeror, or failure of the RTC to make a determination regarding 'maximizing' the net present value return on the sale, the district court had no jurisdiction to enjoin *or rescind* the sale." *Ward,* 996 F.2d at 104 (emphasis in original). *See also United Liberty Life Insurance Co. v. Ryan,* 985 F.2d 1320, 1329 (6th Cir.1993) (holding that district court lacked jurisdiction to rescind receiver's transfer of assets to third party).

Also persuasive is *Volges v. Resolution Trust Corp.,* 32 F.3d 50 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995), in which the court was asked to enjoin the receiver's proposed sale of mortgages. Although the RTC had allegedly contracted to sell the mortgages to the plaintiffs, the receiver then sold the instruments to a third party. As the Second Circuit cogently summarized, the issue was whether § 1821(j) stripped the district court of subject matter jurisdiction to enjoin the RTC as receiver from disposing of assets in a manner that arguably would breach a post-receivership contract. Because the asset sale fell within the powers or functions of the corporation as receiver, the court concluded that the district court lacked jurisdiction to enjoin the RTC from transferring the mortgages. *See Volges,* 32 F.3d at 52–53. *See also RPM Investments,* 75 F.3d at 621 (holding that court lacked subject matter jurisdiction to order receiver to specifically perform a contract).

Given § 1821(j)'s sweeping ouster of jurisdiction to grant equitable remedies to parties like the plaintiffs, and judicial analysis of this question within and without this circuit, the Court holds that it lacks jurisdiction to grant the non-monetary relief requested by plaintiffs. The Court notes that other courts have observed that due process concerns arise if federal law completely forecloses all remedies for parties aggrieved by the receiver's actions. *See RPM Investments,* 75 F.3d at

621; *Freeman,* 56 F.3d at 1399; *Volges,* 32 F.3d at 53. But no such danger lurks here because the plaintiffs will have an opportunity to seek monetary damages through the administrative claims process outlined in § 1821(d), with *de novo* judicial review if the result proves unsatisfactory.[7] *See* 12 U.S.C. § 1821(d)(6)(A).

### Conclusion

For the foregoing reasons, the Court lacks subject matter jurisdiction over the plaintiffs' and cross-claimants' monetary claims and is statutorily barred from providing the requested non-monetary relief. Thus, the Complaint must be dismissed without prejudice as to the FDIC. The Court will stay further proceedings against the non-FDIC defendants pending completion of the FDIC's administrative claims review process.

### ORDER

For the reasons set forth on the record on May 13, 1996, as explained more fully in the accompanying Opinion, **IT IS** on this 16th day of May, 1996, **ORDERED** that the Federal Deposit Insurance Corporation's motion to dismiss the Complaint and Cross–Claim for lack of jurisdiction is granted without prejudice.

**IT IS FURTHER ORDERED** that the action against the remaining non-FDIC defendants be stayed pending completion of the FDIC's administrative claims review process.

---

**7.** At oral argument, the FDIC informed the Court that plaintiffs had been sent notice regarding their right to file a formal administrative claim with the receiver. As long as any claim is filed within 90 days of March 21, 1996, the FDIC will consider it timely filed.