926 F.2d 963
 Randy ARNOLD, Plaintiff-Appellant,
v.
Lantz McCLAIN, individually as District Attorney of Creek
County; Board of County Commissioners, County of
Creek; Board of County Commissioners,
County of Okfuskee,
Defendants-Appellees.
 No. 89-5074.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 21, 1991.
 
 Chadwick Smith, Tulsa, Okl., for plaintiff-appellant.
 Robert A. Nance, Asst. Atty. Gen., Oklahoma City, Okl. and Michael S. Loeffler, Sapulpa, Okl. (Robert H. Henry, Atty. Gen., J. Bruce Schultz, Asst. Dist. Atty., Sapulpa, Okl., with them on the brief), for defendants-appellees.
 Before MOORE, TACHA, and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Randy Arnold (Plaintiff) appeals the grant of a motion to dismiss his civil rights complaint against two defendant counties[1] and the grant of summary judgment in favor of District Attorney Lantz McClain (Defendant).
 
 BACKGROUND
 
 2
 Plaintiff is a police officer for the City of Sapulpa, Oklahoma. On November 6, 1987, at 2:30 p.m., Plaintiff was summoned to the office of District Attorney McClain. At that time, Plaintiff was informed by Defendant that because of inconsistencies in testimony given by Plaintiff under oath, criminal perjury charges would be filed against him unless he resigned from the Sapulpa police force by 5:00 p.m. that day.[2]
 
 
 3
 After two phone conversations with his wife, and a brief meeting with his attorney, Plaintiff tendered his resignation to the City of Sapulpa and it was accepted. Several days later, Plaintiff reconsidered and unsuccessfully attempted to rescind his resignation.
 
 
 4
 On November 10, 1987, Plaintiff was invited to a meeting of the Fraternal Order of Police (FOP) to discuss the circumstances surrounding his resignation from the police force. Plaintiff attended the meeting with counsel and expressed to the officers present his version of the events surrounding his resignation. Defendant also came to the meeting and made statements regarding Plaintiff's resignation and the reasons behind it. Members of the press were admitted into the meeting and portions of Defendant's statements, as well as the earlier statements of Plaintiff and his counsel, were videotaped and later broadcast on television.
 
 
 5
 On November 13, 1987, Plaintiff filed this action. Initially, the defendants were: Jack McKenzie, individually and in his official capacity as Chief of Police of the City of Sapulpa; Roger Miner, individually and in his official capacity as the City Manager of the City of Sapulpa; the City of Sapulpa (Oklahoma); Lantz McClain, individually and in his official capacity as District Attorney; and the Boards of Commissioners of Okfuskee and Creek Counties. Plaintiff and defendants City of Sapulpa, Roger Miner and Jack McKenzie, reached a settlement and Plaintiff was reinstated as a police officer. District Attorney McClain and the two counties were not involved in the settlement. Plaintiff subsequently filed an amended complaint against Defendant and the two counties, and they filed Motions to Dismiss. The motion of Creek and Okfuskee Counties was granted, and the motion of Defendant was granted only as to a pendent state claim for breach of contract. Defendant then filed a Motion for Summary Judgment raising the defenses of absolute and qualified immunity.
 
 
 6
 After Plaintiff's filing of his complaint, Defendant proceeded to file the perjury charge against him. Plaintiff sought and secured a Writ of Prohibition from the Oklahoma Court of Criminal Appeals prohibiting the prosecution of the perjury charge. In its order the court stated "[b]oth parties agree that the[ ] negotiations amounted to an agreement between the State and petitioner regarding criminal prosecution." The court found the agreement was binding; that Plaintiff had fulfilled his obligations under the agreement by resigning that day; and that "respondents [were] estopped from further prosectution [sic] of [the] action."
 
 
 7
 The district court granted Defendant's Motion for Summary Judgment. Plaintiff now appeals claiming the district court erred: 1) in granting Creek and Okfuskee Counties' Motion to Dismiss and Defendant's Motion for Summary Judgment based on the conclusion that District Attorney McClain is a state officer for purposes of 42 U.S.C. Sec. 1983 liability and Eleventh Amendment immunity;[3] 2) in finding Defendant was entitled to absolute prosecutorial immunity for his "constructive discharge" of Plaintiff; 3) in finding Defendant was entitled to qualified or good faith immunity from suit for his "constructive discharge" of Plaintiff; 4) in finding that Plaintiff failed to sufficiently establish his liberty interest claim; and 5) in declining to exercise jurisdiction over the pendent state claims. We affirm.
 
 DISCUSSION
 
 8
 When reviewing a district court's dismissal for failure to state a claim, we must accept as true the factual allegations of the plaintiff and resolve all reasonable inferences in his favor. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1266 (10th Cir.1989). We will uphold the district court's dismissal if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. Id.
 
 
 9
 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a district court's grant of summary judgment, we resolve all factual disputes and draw all inferences in favor of the nonmoving party. Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 979 (10th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). However, summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A failure by the nonmoving party to establish an essential element of its case necessarily renders all other facts immaterial, resulting in there being "genuine issue as to any material fact." Id. at 323, 106 S.Ct. at 2552. Finally, this court is " 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " Schepp v. Fremont County, 900 F.2d 1448, 1454 (10th Cir.1990) (citations omitted).
 
 
 10
 Plaintiff first contends the district court erred in granting Creek and Okfuskee Counties' Motion to Dismiss and in granting Defendant's Motion for Summary Judgment based on its finding that Defendant is a state official for purposes of liability under 42 U.S.C. Sec. 1983 and Eleventh Amendment immunity. We shall address these two rulings of the district court separately.
 
 
 11
 Dismissal of Plaintiff's Claims Against Creek and Okfuskee Counties
 
 
 12
 Plaintiff argues Creek and Okfuskee Counties are liable for the official acts of Defendant as these counties comprise District Number 24, the district for which Defendant serves as district attorney. In a recent case, we decided this issue in regard to the very same defendants, stating:
 
 
 13
 In contrast to the extensive funding and control exercised by the state over the office of district attorney, there is little in the record to show that the two counties comprising District No. 24 exercise control over the district attorney or his officers. Although the voters of Creek and Okfuskee Counties elect the district attorney, the office as it is arranged by statute seems to be an extension of the state. The Oklahoma Supreme Court has not spoken definitively on the issue, but there is some indication that it would view the district attorney as a state officer. We agree with the district court's conclusion that under Oklahoma law the district attorney is an arm of the state.
 
 
 14
 Laidley v. McClain, 914 F.2d at 1391-92 (citations omitted and emphasis added). We find this case dispositive.
 
 
 15
 Recognizing Defendant is a state official under Oklahoma law, we affirm the district court's dismissal for failure to state a claim in favor of the two counties.
 
 
 16
 Grant of Defendant Lantz McClain's Motion for Summary Judgment
 
 
 17
 Plaintiff brought suit against Defendant both individually and in his official capacity as district attorney. We deal first with Plaintiff's claims against Defendant in his capacity as district attorney.
 
 
 18
 A. District Attorney Lantz McClain--Official Capacity
 
 
 19
 Official capacity suits represent " 'another way of pleading an action against an entity of which an officer is an agent.' " Laidley, 914 F.2d at 1392 (quoting Monell v. Department of Social Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)). As we have already determined that Defendant is a state officer, Plaintiff, in effect, is bringing his claim against the state of Oklahoma. Such a claim is barred by the Eleventh Amendment, which prohibits bringing an action for damages against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); see also Rozek v. Topolnicki, 865 F.2d 1154, 1158 (10th Cir.1989) (holding that when a district attorney is a state officer, he is entitled to Eleventh Amendment immunity). We therefore affirm the district court's grant of summary judgment in regard to Plaintiff's claims against Defendant in his official capacity.
 
 
 20
 B. District Attorney Lantz McClain--Individual Capacity
 
 
 21
 We next turn to Plaintiff's claims against Defendant in his individual capacity. Plaintiff asserts both liberty and property interest deprivations under the Fifth and Fourteenth Amendments of the Constitution. In support of his claims Plaintiff argues: 1) that Defendant's "constructive discharge" of Plaintiff was a due process violation of his property interest based on his employment contract; and 2) that Defendant's alleged statements to the press amounted to a due process violation of Plaintiff's liberty interest in being "free of stigmatization." Defendant argues his actions were within the scope of his prosecutorial duties thereby entitling him to absolute prosecutorial immunity.
 
 
 22
 1. Property Interest.
 
 
 23
 Looking to Plaintiff's property interest claim, we first note our disagreement with Plaintiff's characterization of the district attorney's actions as being a "constructive discharge." Constructive discharge is a question of fact which we review under a clearly erroneous standard. Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 580 (10th Cir.1990) (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir.1989)). In determining whether a constructive discharge has occurred, we look to " 'whether the employer by its illegal ... acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.' " Spulak v. K Mart Corp., 894 F.2d 1150, 1154 (10th Cir.1990) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986)).
 
 
 24
 In this case, Plaintiff was given a choice of whether to resign or to have criminal perjury charges brought against him. Plaintiff chose the former option. Plaintiff was given several hours in which to make his decision, during which time he consulted with his wife and with an attorney. Following his resignation, Plaintiff petitioned the Oklahoma Court of Criminal Appeals to enforce the agreement reached between the parties, specifically, to enforce the district attorney's "promise" not to file perjury charges against Plaintiff. The Oklahoma court granted Plaintiff's request finding the negotiations resulted in a binding agreement between the parties. Based on the record, we do not find the district court's characterization of Defendant's actions in connection with securing Plaintiff's resignation as being part of the "plea bargaining process" to be clearly erroneous. We find Plaintiff voluntarily resigned, accepting the benefits of his "bargain" with Defendant by avoiding facing the criminal perjury charge, and cannot now claim this bargain amounted to a constructive discharge, particularly in light of the fact that he went to state court and had the bargain judicially enforced.
 
 
 25
 Having determined no constructive discharge occurred, we must still address whether the actions of Defendant were within his prosecutorial duties, entitling him to absolute immunity for Plaintiff's property interest claim. The determination of whether Defendant should be entitled to prosecutorial immunity for his actions in securing Plaintiff's resignation is a question of law, which we review de novo. England v. Hendricks, 880 F.2d 281, 285 (10th Cir.1989) (citing Eastwood v. Department of Corrections, 846 F.2d 627, 629 (10th Cir.1988)), cert. denied --- U.S. ----, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990).
 
 
 26
 In Imbler v. Pachtman, 424 U.S. 409, 424-27, 96 S.Ct. 984, 992-93, 47 L.Ed.2d 128 (1976), the Supreme Court made clear that prosecutors are entitled to absolute immunity from Sec. 1983 suits for damages when their actions are within the scope of their prosecutorial duties. Plaintiff argues that the agreement reached between him and Defendant was not a "bona fide plea bargain" and therefore exceeded the scope of the district attorney's prosecutorial discretion. We find this analysis flawed. First, we note this court's decision in Lerwill v. Joslin, 712 F.2d 435, 439 (10th Cir.1983), where we stated:
 
 
 27
 Even if a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority, it does not follow that he does so immediately upon crossing the technical bounds of the power conferred on him by local law. Indeed, it has long been a fundamental tenet of immunity doctrine that when a judicial officer has absolute immunity from liability, his immunity does not become qualified simply because he acted in excess of his authority. In Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), the Supreme Court held that while a judge is not absolutely immune for judicial acts taken in "the clear absence of all jurisdiction over the subject matter," he remains immune for such acts that were merely in "excess of [his] jurisdiction." Id. [80 U.S.] at 351-52.... As the Court more recently explained ... [a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." ... While Bradley dealt with judicial immunity, it has generally been found applicable to a prosecutor's quasi-judicial immunity as well.... In determining whether a prosecutor has lost his absolute immunity by committing a prosecutorial act beyond the scope of his authority, we must interpret his authority broadly.
 
 
 28
 Id. (citations omitted). Second, the technical label applied to an agreement or negotiation of this nature is immaterial. As stated by the Supreme Court in Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971): "[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." We find the "agreement" between the two parties herein to be sufficiently analogous to a plea bargain to warrant the same deference to the prosecutor's discretion. Accordingly, we find Defendant is entitled to absolute prosecutorial immunity for his actions in securing the resignation of Officer Arnold. See Town of Newton v. Rumery, 480 U.S. 386, 395, 107 S.Ct. 1187, 1193, 94 L.Ed.2d 405 (1987); Imbler, 424 U.S. at 424-31, 96 S.Ct. at 992-96. Having determined Defendant is absolutely immune for his actions in securing Plaintiff's resignation, we need not reach Plaintiff's contention that the district court erred in finding Defendant would also be entitled to good faith or qualified immunity for his actions.
 
 
 29
 2. Liberty Interest.
 
 
 30
 Plaintiff next contends the district court erred in sustaining Defendant's motion for summary judgment on Plaintiff's liberty interest claim. As the basis for his liberty interest claim Plaintiff contends that "stigmatizing statements [made by Defendant] to the press against [Plaintiff] at the FOP meeting on November 10, 1987" deprived him of a liberty interest without due process of law. Defendant argues such statements were made only after the circumstances surrounding Plaintiff's resignation had been made public by Plaintiff and his attorney. In granting summary judgment on this issue, the district court found that Defendant "appeared only in an effort to give his side of the story and to rebut charges of impropriety," and that the "information had already been publicly disseminated" prior to any statement by Defendant. The district court then held that Plaintiff "failed to come forward with specific facts showing ... a genuine issue for trial and that the record taken as a whole could not lead a rational trier of fact to find for the Plaintiff."
 
 
 31
 After reviewing the record and considering the evidence in the light most favorable to Plaintiff, we find Plaintiff has failed to sufficiently establish his liberty interest deprivation based on Defendant's alleged "stigmatizing" statements to the press. In his brief to this court, Plaintiff concedes that information regarding his resignation had been disseminated to the law enforcement community prior to any statements made by Defendant.[4] However, Plaintiff contends it is Defendant's statements labeling Plaintiff a "perjurer" that provide the basis for his liberty interest claim. Under the applicable case law and facts, we find this claim untenable.
 
 
 32
 In order to establish a claim of liberty interest deprivation, a government employee must show publication of false and defamatory information in connection with his termination by someone acting under the color of state law. Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); Bailey v. Kirk, 777 F.2d 567, 572 (10th Cir.1985). In addition, "once a properly supported motion for summary judgment is made, the opposing party may not merely rest on the allegations in the complaint [but] must respond with some factual showing of the existence of a genuine issue of material fact." Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1412 (10th Cir.1984) (emphasis added). Plaintiff failed to make a factual showing that a genuine issue of material fact exists regarding the falsity of the statements made by Defendant. Nor has there been any such finding made by the Oklahoma state courts or federal district court. See Codd, 429 U.S. at 627, 97 S.Ct. at 883. Plaintiff has also affirmatively acknowledged that general information regarding his resignation was published prior to any statement by Defendant. We therefore uphold the district court's ruling that Defendant's statements at the FOP meeting did not provide the basis for a constitutional claim of a liberty interest deprivation.[5]
 
 
 33
 Dismissal of Plaintiff's Pendent State Tort Claims
 
 
 34
 The district court declined to exercise jurisdiction over Plaintiff's pendent state tort claims. Inasmuch as we find no substantial federal claim to exist, we affirm the district court's ruling on Plaintiff's pendent tort claims. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-29, 86 S.Ct. 1130, 1139-41, 16 L.Ed.2d 218 (1966).
 
 CONCLUSION
 
 35
 For the aforementioned reasons, we AFFIRM the district court's order granting Creek and Okfuskee Counties' Motion to Dismiss and District Attorney Lantz McClain's Motion for Summary Judgment.
 
 
 
 [1]
 The Boards of County Commissioners of Creek County and Okfuskee County are also named defendants
 
 
 [2]
 Initially, the deadline was set at 4:30 p.m., but later was extended to 5:00 p.m
 
 
 [3]
 As an alternative to finding in Plaintiff's favor on this issue, Plaintiff requests this court to certify the question of whether the District Attorney, for purposes of liability under 42 U.S.C. Sec. 1983 and Eleventh Amendment immunity, is a state official. Certifying a question of law rests in the discretion of the federal court. Lehman Bros. v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). In light of our recent decision where we found that under Oklahoma law the district attorney is a state officer, we deny Plaintiff's request of certification of this issue. Laidley v. McClain, 914 F.2d 1386, 1392 (10th Cir.1990)
 
 
 [4]
 Plaintiff apparently does not take full responsibility for the dissemination of information regarding his "discharge" but acknowledges in his brief to this court that he spoke to fellow officers at the FOP meeting about his discharge prior to Defendant's arrival at the meeting. Plaintiff contends, however, that the issue is not who initially released the information regarding his resignation; rather, the key is who publicly disseminated the stigmatizing information about him. We do not dispute Plaintiff's distinction; rather, we find the distinction inapplicable to the present facts. Plaintiff herein admits to explaining to the officers at the FOP meeting the circumstances which led to his resignation, including the perjury charge. Defendant, in his statements, addressed the same issues. Merely because Defendant's version was less favorable to Plaintiff than his own does not give rise to the type of claim advanced by Plaintiff
 Plaintiff also argues Defendant "crashed [the] FOP meeting uninvited...." Yet, in reviewing the transcript from the FOP meeting, we found the following statement made by a fellow officer near the end of Defendant's comments:
 You've all had the rare opportunity to see both sides of it first hand, as the jury, the judge, defense attorney, and prosecutor. And that's the only reason that [Plaintiff] agreed to speak tonight to let you judge for yourself. And you've certainly had the perfect--certain opportunity to do that. And I think we ought to appreciate [Defendant] for coming and giving his side of it.
 This statement indicates a clear understanding by FOP members that the purpose of this meeting was to hear both sides of this dispute. It is also clear that even if this meeting was initially meant to be "closed," as Plaintiff contends, it became "open" through no fault of Defendant. We find further support for this proposition in Plaintiff's Brief in Objection of Motion for Summary Judgment, where Plaintiff offers the statement of Officer Harley Hausam, Sapulpa FOP president. Included in his statement, Officer Hausam states that "GARY YOUNG, FOP Secretary-Treasurer, then invited the press, who were waiting outside, into the meeting."
 
 
 [5]
 We recognize that a public prosecutor's statements in regard to criminal proceedings are not entitled to absolute immunity when made in a capacity other than that of an advocate, since such statements would not be considered quasi-judicial acts. England v. Hendricks, 880 F.2d 281 (10th Cir.1989), cert. denied --- U.S. ----, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990); Gobel v. Maricopa County, 867 F.2d 1201, 1205 (9th Cir.1989). However, while unnecessary in light of our disposition of this issue, we note here that we believe Defendant would be entitled to qualified immunity for his statements made at the FOP meeting. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); England, 880 F.2d at 285. This court noted in England that a prosecutor's statements to the press are considered an administrative function entitling the prosecutor to qualified immunity in most instances. The scope of this immunity was set out in Laidley v. McClain, 914 F.2d 1386, 1394 (10th Cir.1990) (citing Harlow, 457 U.S. at 818, 102 S.Ct. at 2738), where we acknowledged that government officials would be entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. The plaintiff bears the burden of establishing a substantial correspondence between the conduct in question and prior law which would show the defendant's actions were clearly prohibited. Id., citing Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir.1990). Plaintiff has failed to establish a violation of clearly established law by Defendant or the requisite nexus to his actions