PYRAMID CONSTRUCTION COMPANY, INC., a New Jersey corporation, Plaintiff,

v.

WIND RIVER PETROLEUM, INC., a Utah corporation, Defendant.

Civ. No. 94–C–428.

United States District Court, D. Utah, Central Division.

Sept. 12, 1994.

Gordon Strachan, Todd D. Wakefield, Strachan & Strachan, Park City, UT, for plaintiff.

Bruce A. Maak, Jeffrey J. Hunt, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, UT, for Wind River Petroleum.

Florian Frederick Chess, Resolution Trust Corp., Denver, CO, James Esparza, The Woodlands, Salt Lake City, UT, for Resolution Trust Corp.

## ORDER DISMISSING PYRAMID'S FIFTH CAUSE OF ACTION

WINDER, Chief Judge.

This matter is before the court on three related motions: (1) Defendant Wind River Petroleum, Inc.'s ("Wind River") motion to dismiss Plaintiff Pyramid Construction Company, Inc.'s ("Pyramid") fourth and fifth causes of action; (2) Intervenor Resolution Trust Corporation's ("RTC") motion to intervene for the express purpose of asking the court to dismiss Pyramid's fourth and fifth causes of action; and (3) the RTC's motion to dismiss Pyramid's fourth and fifth causes of action. A hearing on all three motions was held on August 25, 1994. At the hearing, Gordon C. Strachan and Todd D. Wakefield represented Pyramid, Bruce A. Maak and Jeffrey J. Hunt represented Wind River, and Florian Frederick Chess represented the RTC.

Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties relating to all three motions. The court had also read certain of the authorities cited by each of the parties. Following oral argument, and after taking the motions under advisement, the court has further considered the law and facts related to each motion. Having now fully considered the issues in this case, and good cause appearing, the court enters the following memorandum decision and order.

## I.  BACKGROUND

The case at bar concerns the validity of a sale by the RTC, as receiver for Western Savings and Loan Association ("Western"),[1] of the Snow Creek Parcel, a 51.84 acre tract of land situated near the intersection of Utah

---

1. Western is a failed Phoenix, Arizona thrift. In May, 1990, the RTC was appointed receiver of Western's assets and liabilities, including the 51.84 acre Snow Creek Parcel at issue here.

highways U–224 and U–248 in Park City, Utah.

Wind River currently operates a "Top Stop" gas station and convenience store on a leased .861 acre portion of the 51.84 site. Wind River is also the successor-in-interest to a May, 1965 lease agreement covering the same .861 acres upon which its gas station is located. The 1965 lease agreement grants Wind River a "right of first refusal in the event the lessor, or its successor, desires to sell the Gas Station portion of the [Snow Creek] property." *See* Pyramid's Complaint, ¶ 9.

In 1991, the RTC, as receiver for Western, decided to sell the Snow Creek Parcel in liquidation of Western's assets. As was required by the Coastal Barrier Resources Act,[2] the RTC, through its asset manager Transamerica Real Estate Management Co. ("Transamerica"), first offered the parcel, including Wind River's .861 acre gas station site, to qualified governmental entities. Soon thereafter, Park City Municipal Corporation ("Park City") expressed an interest in purchasing the property from the RTC.

On September 17, 1992, Park City published a Request For Proposal ("RFP") in Utah newspapers of general circulation seeking a private financial partner to assist it in acquiring the property. Pyramid responded to Park City's RFP on October 9, 1992 by advising Park City of its interest in pursuing the partnership.[3] Soon thereafter, on December 9, 1992, Park City announced its selection of Pyramid as a financial partner in acquiring the Snow Creek Parcel from the RTC.[4]

Meanwhile, Park City and Transamerica were engaged in ongoing negotiations regarding the sale of the Snow Creek Parcel to Park City. On May 18, 1993, the RTC condi-

tionally accepted an offer by Park City to purchase the land for $1.9 million.[5] The RTC's conditional acceptance was prefaced with the following cautionary note however:

> Transamerica [and the RTC] shall not be bound until it executes a contract of purchase and sale. Until such time as the contract is executed by both parties, the RTC reserves the right to consider other offers for the purchase of all or any part of the ... property.

*See* Letter from Suzanne Drake, Transamerica Assistant Vice–President, to Toby Ross, Park City Municipal Corporation, at 1 (May 18, 1993).

In early September of 1993, the RTC announced that Park City was the winning bidder for the Snow Creek Parcel. Later that same month, on September 24, 1993, Park City assigned all of its interest in the Snow Creek Parcel to Pyramid. Soon thereafter, on October 7, 1993, Mr. William J. Coleman of Pyramid sent a letter to the RTC. Mr. Coleman's letter advised the RTC of the following:

> We understand the reason we have not yet received an executed contract is the RTC's concern over Top Stop's potential right of first refusal. We do not wish to prepare to close with the potential for Top Stop to contest the sale hanging over us. Therefore, we suggest that should you accept our offer, you offer Top Stop the opportunity to exercise their right of first refusal. If they decline, we can enter into contract and close shortly thereafter.

*See* Letter from William J. Coleman, Pyramid Partner, to Suzanne Drake, Transamerica Assistant Vice–President, at 1 (Oct. 7, 1993).

On October 29, 1993, Wind River notified Pyramid that it intended to exercise its right

---

**2.** 16 U.S.C.A. §§ 3501–3510 (West 1988 & Supp. 1994).

**3.** At no time during the RFP process did Wind River ever express an interest in becoming Park City's financial partner.

**4.** Pyramid claims that it expended more than $170,000 to bring the Snow Creek Parcel into compliance with Park City's zoning and planning requirements during the eighteen months follow-

ing its selection as Park City's financial partner, and that a substantial portion of those funds were spent to alleviate environmental damage caused by leaking petroleum at Wind River's gas station.

**5.** This offer was later revised downward to $1.7 million to compensate Pyramid for the estimated cost of alleviating environmental damage on the property.

of first refusal on the .861 acre gas station site.[6] Subsequently, on November 3, 1993, the RTC sent Pyramid a proposed final Purchase and Sale Agreement. That final agreement, among other things, purported to give Wind River a right of first refusal on the *entire* Snow Creek Parcel, and not just the .861 acres of land upon which its gas station was located. Because of the RTC's erroneous calculation of the scope of Wind River's right of first refusal, Pyramid refused to execute the agreement.[7]

On or about December 28, 1993, the RTC informed Pyramid that Wind River had purchased the entire 51.84 acre Snow Creek Parcel from the RTC. Subsequently, on March 17, 1994, the RTC conveyed the property to Wind River via a special warranty deed. That deed, which was duly recorded in the Summit County, Utah Recorder's Office on March 23, 1994, requires the RTC to appear and defend Wind River against any challenge to its title in the Snow Creek Parcel.[8]

On April 22, 1994, Pyramid sued Wind River in this court asserting five causes of action against Wind River arising out of the aforementioned facts. Pyramid's fourth and fifth causes of action are now the subject of this memorandum decision and order.[9] Pyramid's fourth cause of action seeks a declaration by this court that the RTC's sale of the Snow Creek Parcel to Wind River is "void and of no legal force and effect," and that Pyramid is "entitled to consummate its purchase of the Snow Creek Parcel under the terms previously offered to and accepted" by the RTC. *See* Pyramid's Complaint, ¶¶ 61–62. Pyramid's fifth cause of action asks this court for preliminary and permanent injunctive relief "[p]reventing defendant Wind River from taking any action to make any physical changes, alterations, modifications, or improvements to the Snow Creek Parcel," and "[r]equiring defendant Wind River to transfer to plaintiff . . . title to the Snow Creek Parcel." *Id.* at ¶ 65.

On June 27, 1994, the RTC filed both a motion to intervene and a motion to dismiss Pyramid's fourth and fifth causes of action on the ground that the relief sought by Pyramid in those counts would "restrain or affect" the RTC in violation of 12 U.S.C.A. § 1821(j) and the jurisdictional bar thereunder.[10] Soon thereafter, on July 8, 1994, Wind River filed a motion to dismiss Pyramid's fourth and fifth causes of action on the same ground.

■ Subsequently, on July 27, 1994, Pyramid and Wind River stipulated to the dismissal of Pyramid's fourth cause of action "with prejudice and on its merits" because of a belief by the parties that the relief requested therein would violate section 1821(j).[11]

---

**6.** Apparently, this was the first time that Wind River had ever declared an interest in exercising its rights under the 1965 lease agreement.

**7.** That same agreement also stated that Wind River's contamination of its gas station site was a breach of the 1965 lease under which it claimed its right of first refusal.

**8.** Wind River's special warranty deed provides, in part:

> Grantor hereby covenants with Grantee that Grantor will forever defend Grantee against claims of all persons claiming by, through, or under Grantor.

*See* Special Warranty Deed, Doc. No. 00400773, Book No. 00794, Pg. No. 00499005 (on file with the Summit County, Utah Recorder).

**9.** Pyramid's first and second causes of action state claims against Wind River for intentional interference with prospective economic relations and intentional interference with present economic relations respectively. *See* Pyramid's Complaint, ¶¶ 43–52. Pyramid's third cause of action states a claim against Wind River for

injurious falsehoods. *Id.* at ¶¶ 53–58. Neither Wind River nor the RTC challenges the viability of these causes of action at the present time.

**10.** As is more fully discussed *infra,* section 1821(j) prevents a court from granting a litigant any form of relief which might "restrain or affect" the RTC in the exercise of its powers or functions as a receiver. *See* 12 U.S.C.A. § 1821(j) (West 1988).

**11.** As noted *supra,* Pyramid's fourth cause of action requested that the RTC's sale of the Snow Creek Parcel to Wind River be rescinded and that the RTC be ordered to sell the parcel to Pyramid. Such a remedy clearly violates the statutory mandate of section 1821(j). *See, e.g., Carney v. Resolution Trust Corp.,* 19 F.3d 950, 956–58 (5th Cir.1994) (holding that section 1821(j) deprives a district court of jurisdiction to issue declaratory and injunctive relief against the RTC); *Ward v. Resolution Trust Corp.,* 996 F.2d 99, 104 (5th Cir.1993) (per curiam) (holding that section 1821(j) bars a district court from enjoining or rescinding a sale by the RTC of the assets of a failed thrift).

This court then signed an order dismissing with prejudice Pyramid's fourth cause of action on August 13, 1994. Wind River now argues that, in addition to its section 1821(j) argument noted *supra,* Pyramid's fifth cause of action should be dismissed for two additional reasons. First, Wind River argues that because the factual basis of Pyramid's fourth and fifth causes of action are identical, Pyramid's dismissal of its fourth cause of action also "jettisoned the legal basis for the injunctive relief requested in its Fifth Cause of Action." *See* Wind River's Reply Mem. in Supp. of Wind River's Mot. Dismiss Pl.'s Fourth and Fifth Causes of Action at 2–3. Second, Wind River argues that because Pyramid agreed to the dismissal of its fourth cause of action "with prejudice and upon its merits," Pyramid is also barred from litigating its fifth cause of action under the doctrine of res judicata. *Id.* at 3–5.

## II.  *STANDARD OF REVIEW*

■ In determining whether to grant a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept all well-plead facts as true. *Arnold v. McClain,* 926 F.2d 963, 965 (10th Cir.1991). In addition, all inferences that can be drawn from the allegations must be drawn in favor of the plaintiff. *Id.* at 965. "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailable one." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citation omitted) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

## III.  *DISCUSSION*

■ The dispositive issue to be decided here is whether the anti-injunction provision of the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C.A. § 1821(j), deprives this court of jurisdiction to grant the type of relief requested in Pyramid's fifth cause of action. For the reasons discussed below, the court finds that such jurisdiction is indeed lacking, and accordingly grants Wind River's motion to dismiss Pyramid's fifth claim for relief.[12]

■ When Congress enacts a statute prohibiting a federal court from granting a certain type of remedy, that limitation is jurisdictional. *See Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981) (holding that prohibitions against enjoining or restraining IRS assessments in the federal Tax Injunction Act constitute limitations on federal district court jurisdiction). In this case, Wind River claims that the equitable relief Pyramid seeks in its fifth cause of action has been prohibited by Congress pursuant to 12 U.S.C.A. § 1821(j), and that this court therefore lacks jurisdiction to entertain it under the authority cited above. Section 1821(j) provides:

(j) Limitation on court action

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, *to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.*

12 U.S.C.A. § 1821(j) (West 1988) (emphasis added).[13]

■ Clearly, the disposition of a failed thrift's assets, like the RTC's sale of the Snow Creek Parcel to Wind River in this case, is one of the quintessential statutory powers of the RTC as a receiver. *See id.* § 1821(d)(2)(E) (giving the RTC the express power to "realize upon the assets of the institution"); *Ward v. Resolution Trust*

---

**12.** Because of the disposition of this issue, the court need not determine whether the RTC should be allowed to intervene in this case or whether Wind River's "factual predicate/res judicata" argument also bars Pyramid from litigating its fifth cause of action.

**13.** Section 1821(j) originally applied solely to the FDIC. However, when Congress created the RTC in 1989, it gave the RTC the same rights and powers as those possessed by the FDIC under section 1821(j). *See* 12 U.S.C.A. § 1441a(b)(4) (West 1988); *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1328 (6th Cir.1993).

*Corp.,* 996 F.2d 99, 104 (5th Cir.1993) (per curiam) (holding that the "sale of property acquired by the RTC from a failed institution, or administered by the RTC as conservator or receiver of such an institution, is beyond cavil a statutory power and function of the RTC"). Equally clear is that section 1821(j) prohibits a federal court from granting a party any sort of equitable relief that would directly "restrain or affect" the RTC in carrying out its statutory powers. *See, e.g., Carney v. Resolution Trust Corp.,* 19 F.3d 950, 956–58 (5th Cir.1994) (holding that section 1821(j) prevents a court from considering claims for declaratory and injunctive relief against the RTC); *Ward,* 996 F.2d at 104 (holding that section 1821(j) prevents a court from either enjoining or rescinding the RTC's sale of property acquired from a failed thrift); *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1329 (6th Cir.1993) (holding that section 1821(j) prohibits a court from rescinding the RTC's transfer of the assets of a failed thrift).

Pyramid does not quibble with these authorities in opposing Wind River's motion to dismiss here. Indeed, Pyramid's argument in this case centers not on the concededly broad sweep of section 1821(j), but on whether section 1821(j) applies to the relief requested in Pyramid's fifth cause of action at all.[14] As noted *supra,* Pyramid's fifth cause of action seeks injunctive relief requiring Wind River to transfer title in the Snow Creek Parcel to Pyramid in exchange for the purchase price to which Pyramid and the RTC had previously agreed. *See* Pyramid's Complaint at ¶ 65. Pyramid contends that this relief does not violate section 1821(j)'s "restraining or affecting" language in any way, because "[h]aving already liquidated the property that is the subject of this litigation, and having realized the profits therefrom, RTC has entirely performed its role as receiver and has no remaining interest in the property." *See* Pyramid's (Substituted) Mem. in Opp'n to Mot. to Intervene at 2.[15]

■■■■■ The court must reject Pyramid's narrow interpretation of section 1821(j), for several reasons. First, the plain language of the statute does not allow for such a limited reading. It provides that "no court may take *any action* ... to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C.A. § 1821(j) (West 1988) (emphasis added). Such broad and all-encompassing language evidences, in the court's view, an intent by Congress to prohibit *any* interference with the RTC as a receiver—either directly or indirectly. Thus, to the extent that Pyramid attempts to confine section 1821(j)'s reach to only those cases where the RTC is *directly* interfered with, that attempt must be rejected as inconsistent with the statute itself. *See Volges v. Resolution Trust Corp.,* 32 F.3d 50, 52 (2d Cir.1994) (refusing to narrow section 1821(j)'s reach in light of the statute's broad and unequivocal language).

Second, Pyramid's narrow reading of section 1821(j) is controverted by the many federal courts around the United States which have also interpreted the statute. For example, in *Telematics Int'l v. NEMLC Leasing Corp.,* 967 F.2d 703 (1st Cir.1992), Telematics, a private, non-RTC plaintiff, sought declaratory relief permitting it to attach a certificate of deposit in which an insolvent bank in FDIC receivership held a security interest. The First Circuit refused to entertain such relief under section 1821(j), however, because it "would have the same effect, from the FDIC's perspective, as directly enjoining the FDIC from attaching the asset." *Id.* at 707. Similarly, in *Homeland Stores, Inc. v. Resolution Trust Corp.,* 1992 WL 319659 (D.Kan. Oct. 13, 1992), *aff'd,* 17 F.3d 1269 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994), Chief

14. Indeed, Pyramid even admits in its opposition papers that under section 1821(j), "'courts are *generally* not permitted to enjoin any actions the RTC takes in its role as receiver or conservator.'" *See* Pyramid's (Substituted) Mem. in Opp'n to Mot. to Intervene at 10 (quoting *Gross v. Bell Sav. Bank PA SA,* 974 F.2d 403, 406 (3d Cir.1992)).

15. Pyramid's argument, pared to its basics, seems to be this: because Pyramid seeks injunctive relief against *Wind River* and not the RTC, such relief could not "restrain or affect" the RTC as a receiver and therefore could not violate section 1821(j).

Judge Kelly held that enjoining a non-RTC defendant in connection with a tortious interference with contract claim would violate section 1821(j) just as surely as if the RTC were enjoined directly. *Id.* at \*9. In so holding, Chief Judge Kelly rejected an argument that was remarkably similar to the one raised by Pyramid here. Chief Judge Kelly wrote:

> The statute states that the court may not take "any action" to restrain the receiver in its functions or powers. 12 U.S.C. § 1821(j). If an injunction against Bob's were to be granted, the effect would be to enjoin RTC in its capacity as a receiver, the very result the statute prevents. There seems [to be] no reason to allow a request for injunctive relief to circumvent the express statutory language. Thus, *the statute says the court cannot take "any action" to restrain the receiver, and this would apply to granting injunctive relief against Bob's.*

*Id.* (emphasis added); *see also Furgatch v. Resolution Trust Corp.,* 1993 WL 149084, at \*2 (N.D.Cal. Apr. 30, 1993) ("Plaintiff contends that section 1821(j) is inapplicable in this case because he is attempting to enjoin Homefed and the trustee who is conducting the sale, not the RTC. However, enjoining these parties indirectly enjoins the RTC, which a district court has no power to do"). In this case, the RTC has already sold the Snow Creek Parcel to Wind River and Pyramid's fifth claim for relief would now rescind that deal in its entirety and order Wind River to sell the property to Pyramid. Such relief would undoubtedly "restrain or affect" the RTC in the performance of its statutory duties just as surely as the cases mentioned above. Accordingly, this court is without power to order such a transaction.

Finally, to read section 1821(j) as narrowly as Pyramid suggests would violate the clear intent of Congress in enacting the statute. As is abundantly clear from its legislative history, section 1821(j) is "but part of a broader scheme enacted to allow the RTC expeditiously to wind up the affairs of defunct savings and loan institutions without judicial interference." *See Volges,* 32 F.3d at 52.[16] If this court allows Pyramid to proceed with its fifth cause of action in this case, that congressional scheme would surely be violated. For example, because the RTC gave Wind River a special warranty deed when it transferred to it the Snow Creek Parcel, it is likely that Wind River would require the RTC to defend that deed in any action where a party, such as Pyramid does here, seeks to challenge Wind River's title. Such a result would by definition "restrain or affect" the RTC in violation of section 1821(j), as it would entrench the RTC in expensive and time-consuming litigation at the expense of fulfilling its statutory duties.[17] Similarly, if this court were to entertain Pyramid's fifth claim for relief in this case, then future transactions might be unduly "chilled" as potential bidders of RTC assets might be wary of having the very type of relief imposed on them that Pyramid seeks to impose on Wind River now. This the court is not prepared to allow.

Thus, for all of the foregoing reasons, this court finds that it lacks jurisdiction under section 1821(j) to grant the type of relief Pyramid has requested in its fifth cause of action. Accordingly, this court grants Wind River's motion to dismiss that claim with prejudice as a matter of law.[18]

---

**16.** Indeed, section 1821(d)(13)(C) of the same legislation prohibits the federal courts from attaching or executing upon the RTC's assets. *See* 12 U.S.C.A. § 1821(d)(13)(C) (West 1988). Similarly, section 1825(b)(2) prohibits the federal courts from either foreclosing or imposing liens upon the RTC's property. *Id.* § 1825(b)(2).

**17.** Pyramid argues that such a result is illusory here because "[n]either the integrity of RTC's title nor its ability to transfer that title are at stake." *See* Pyramid's (Substituted) Mem. in Opp'n to Mot. to Intervene at 18. Pyramid's argument overlooks the fact that, while the RTC might indeed be free from any liability to Wind

River under its special warranty deed, the RTC will be forced to expend countless resources to establish that proposition in court.

**18.** The court notes that Pyramid is not left without a remedy as a result of the decision issued today. For example, Pyramid remains free to prosecute the tort claims it has brought against Wind River in its first, second, and third causes of action. Similarly, Pyramid remains free to assert a damages claim against the RTC as part of the normal administrative claims process. *See Ward v. Resolution Trust Corp.,* 996 F.2d 99, 104 (5th Cir.1993) (per curiam) (discussing this remedy).

## IV. *ORDER*

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Wind River's motion to dismiss with prejudice Pyramid's fifth cause of action is hereby granted.

2. This order shall serve as the order of the court and no further order need by prepared by counsel.