**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAWN P. BLAZIER,

Plaintiff-Appellant,

v.

CURTIS L. LARSON, as an individual and in his official capacity; UTAH COUNTY, a body politic, in its official capacity, a/k/a Utah County Attorney's Office,

Defendants-Appellees.

No. 11-4056
(D.C. No. 2:09-CV-01132-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

Plaintiff Shawn P. Blazier appeals from a district court order dismissing

this civil rights action. Blazier sued Utah County and deputy county attorney

Curtis L. Larson, claiming they violated his constitutional rights in connection

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

with an aborted prosecution under Utah Code Ann. § 76-8-508.3 ("Retaliation against a witness, victim or informant").  We review the legal grounds for dismissal de novo, *see Merryfield v. Jordan*, 584 F.3d 923, 926 (10th Cir. 2009), and affirm for substantially the reasons stated by the district court.

While facing prosecution for assaulting Troy Menlove, Blazier launched an adverse publicity campaign on the internet against Menlove and his girlfriend. This prompted Larson to charge Blazier under § 76-8-508.3(2), which makes it a felony to "cause[] harm," including "injury or damage to . . . reputation," through "threat or action against a witness or . . . victim of any crime" in "retaliation or retribution against the witness [or] victim."  Blazier moved to dismiss, contending that application of the statute to truthful speech was illegal and unconstitutional.[1] Before the motion was resolved, Larson dismissed all charges against Blazier. But he also sent an email to Blazier's counsel indicating that he would consider reinitiating criminal proceedings should Blazier resume his campaign against Menlove and his girlfriend.  Blazier filed this suit claiming that both the initial, aborted prosecution and the threatened future prosecution violated his constitutional rights.  The district court dismissed, and this appeal followed.

---

[1]     Blazier's contention that Larson had applied the statute illegally, as distinct from and in addition to unconstitutionally, rests on Blazier's view that his internet attacks were a form of "legal redress" within the meaning of § 76-8-508.3, which provides an exception for "seeking any legal redress to which the person is otherwise entitled."  The grounds for our disposition here do not require us to address this issue of statutory interpretation.

We limit our review to the rulings challenged by Blazier on appeal.

*See, e.g.*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202 n.2 (10th Cir. 2003).

These involve the claims for damages and injunctive relief against Larson, whom

Blazier sued in his individual and official capacities.[2]

With respect to the individual-capacity claim, the district court held Larson

was entitled to absolute prosecutorial immunity.  We agree.  "Prosecutors are

entitled to absolute immunity for their decisions to prosecute, their investigatory

or evidence-gathering actions, their evaluations of evidence, their determinations

of whether probable cause exists, and their determination of what information to

show the court." *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1164

(10th Cir. 2009).  The allegations against Larson fall within this broad category of

conduct.  The decision to file criminal charges "is a quintessential prosecutorial

function protected by absolute immunity." *Stein v. Disciplinary Bd. of Supreme

Ct. of N.M.*, 520 F.3d 1183, 1194 (10th Cir. 2008).  And this immunity extends to

"conditional prosecutorial decisions," which provisionally withhold charges in

exchange for a quid pro quo, so long as the threat of prosecution is not tied to a

demand "manifestly or palpably beyond [the prosecutor's] authority." *Schloss v.

Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal quotation marks omitted); *see,

e.g.*, *Arnold v. McClain*, 926 F.2d 963, 967 (10th Cir. 1991) (granting absolute

---

[2]     The district court dismissed the claims against Utah County for several
reasons that have not been challenged on appeal.

immunity to prosecutor who threatened to file perjury charges against police officer unless officer resigned).  Threatening to bring charges for conduct a prosecutor believes to be felonious could hardly be manifestly or palpably beyond his authority.[3]

   With respect to the official-capacity claim for injunctive relief against future witness-retaliation charges, the district court held such relief was not warranted because

> [t]he possibility of such a charge being filed against Mr. Blazier if he posted on his website the truthful information he seeks to post is far too speculative, and the specific circumstances surrounding any such charge simply cannot be known at this time.  More importantly, this court declines to interfere with any future state criminal prosecutions.  Mr. Blazier is not without a remedy if he were to be improperly charged in the future, as he could challenge the charge within the context of any future criminal case and/or file a § 1983 action after the fact.

Aplt. App. at 106.  This ruling also reflects a proper application of the governing law.  "[G]enerally a court will not enjoin the enforcement of a criminal statute even though unconstitutional, since such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger* [*v. Harris*, 401 U.S. 37 (1971)]."  *Wooley v.*

---

[3]   Blazier's contention that Larson is not entitled to qualified immunity in light of clearly established law is simply inapposite.  Absolute immunity–which involves an entirely different analysis, turning on the scope of the prosecutorial function rather than the established nature of the right allegedly violated, *see Spielman v. Hildebrand*, 873 F.2d 1377, 1381 (10th Cir. 1989)–obviates any consideration of qualified immunity, *Arnold*, 926 F.2d at 967-68.

*Maynard*, 430 U.S. 705, 712-13 (1977) (internal quotation marks and citations omitted). "[T]his is not an absolute policy," but "[t]o justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Id.* at 713 (internal quotation marks omitted).

The kind of exceptional circumstances contemplated by *Wooley* are evident from the egregious facts in that case, which are not replicated here. In *Wooley*, one of the plaintiffs had been prosecuted three times for violating the challenged law, resulting in two fines and fifteen days in jail, *id.* at 708–a circumstance "quite different from . . . when a prosecution is threatened for the first time," *id.* at 712. Only one charge was brought against Blazier and it was voluntarily dismissed after he challenged application of the statute to his conduct. This fact not only attenuates the extant prejudice to Blazier, it also (1) undercuts the likelihood that charges would actually be brought for similar conduct in the future (Larson's threat notwithstanding) and, more importantly, (2) leaves open the possibility that, should such charges be brought, the state courts would accept his defense that the statute was unconstitutionally applied to his conduct, thus undercutting the showing he must make that a preemptive federal injunction is necessary to afford adequate protection of his constitutional rights. Indeed, these two points are what the district court meant when it characterized Blazier's claim as speculative and stated that he was not without a remedy in any event.

In addition, for the plaintiffs in *Wooley*, avoiding future prosecution under the challenged law (which required use of license plates with a motto repugnant to their religious beliefs) would have required them to give up "their ability to perform the ordinary tasks of daily life which require an automobile." *Id.* Nothing so extensively intrusive into daily life activities is remotely involved here.

The judgment of the district court is AFFIRMED.

Entered for the Court

Neil M. Gorsuch
Circuit Judge